EARL W. HOBART vs. PAUL FREDERICK CAVANAUGH.

Middlesex.    May 1, 1967. — June 29, 1967.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Agency,* Scope of authority or employment. *Assault.*

Evidence in an action that a truck driver employed by the defendant, the operator of a trucking business, customarily received orders on one day to pick up loads of tannery products the next day and on the next day reported at various hours at a garage of the plaintiff, in which the defendant kept his trucks, in order to get a truck to pick up the loads, and that one morning shortly after the plaintiff had opened the garage and while he was filling the tank of one of the defendant's trucks at the gasoline pump the driver, after an altercation with the plaintiff, assaulted him because he had not filled the truck with gasoline earlier and because gasoline bubbled out of its tank warranted a finding that the driver was acting within the scope of his employment at the time of the assault, even though the driver had not "actually started on his first trip to the tanneries scheduled for that day."

TORT.    Writ in the Superior Court dated November 1, 1962.

The action was tried before *Tomasello, J.*

*Daniel J. Johnedis* for the plaintiff.

*Michael T. Prendergast* for the defendant.

KIRK, J.    This action of tort for assault and battery is before us on the plaintiff's exception to the allowance of the defendant's motion that a verdict be entered for him under leave reserved.    G. L. c. 231, § 120.

The defendant (Cavanaugh) conducted a trucking business.    For several years he kept his trucks at a garage operated by the plaintiff (Hobart) in Reading.    Cavanaugh employed one Blickenstaff as a truck driver.    Blickenstaff's normal duties required him to truck tannery products from Peabody or Lynn to Woburn.    He worked on a part time basis, from three to eight hours a day.    Blickenstaff customarily reported for work at Hobart's garage five days a week.    The hour varied.    The people in Peabody and Lynn would notify Blickenstaff when the loads would

be ready the next day, and he, on the next day, would get a truck at Hobart's and pick up the loads whenever they were ready.

The assault took place on August 29, 1962. Hobart was at work at his usual hour, 7 A.M. At seven twenty, while Hobart was putting gasoline into Cavanaugh's trucks, Blickenstaff drove his car into the yard of the garage, parked it, and walked toward Hobart until he was twenty feet from him. Blickenstaff asked Hobart "why the hell he didn't have the truck filled up, hadn't Cavanaugh told him to keep those trucks filled." Hobart told Blickenstaff that "he had an awful lot of mouth for a fellow that wasn't paying the bills." He did not say this in a nice gentle manner; he looked at Blickenstaff when he made this remark. At that moment, the gasoline started to bubble out of the tank; Hobart looked down at it, and, before he knew what happened, he was struck on the jaw and toppled over. Up to that moment only Hobart had handled the truck. He had driven it to the gasoline pump. Later in the morning, Hobart found that he could not bite; his jaw had been broken by the blow.

The question presented is whether this evidence, viewed in its aspect most favorable to Hobart and drawing from it such inferences as are reasonably permissible, was sufficient to support the finding implicit in the jury's verdict that Blickenstaff at the time of the assault was acting within the scope of his employment. We think it was.

Cavanaugh's answers to interrogatories which were in evidence show that although the hour Blickenstaff reported was of his own choosing, the only place where he was to report to do Cavanaugh's work was Hobart's garage. This evidence precludes our adoption of Cavanaugh's contention that the evidence did not permit a finding that Blickenstaff's work for him "did not begin until he actually started on his first trip to the tanneries scheduled for that day." It could be found on other evidence that Blickenstaff knew that Hobart did not open the garage until 7 A.M.; that on his own arrival at 7 : 20 A.M. he was impatient that gasoline

had not already been put into his employer's truck; and that he struck the blow because of the delay and the incidental waste when the gasoline bubbled over. Thus viewed the evidence meets the test stated in *Levi* v. *Brooks,* 121 Mass. 501, 505, and most recently applied in *Rego* v. *Thomas Bros. Corp.* 340 Mass. 334, 335. *Collins* v. *Wise,* 190 Mass. 206. *Zerngis* v. *H. P. Hood & Sons,* 255 Mass. 603, 604.

The exceptions are sustained and judgment is to be entered on the verdict returned by the jury.

*So ordered.*