BERTHA MILLER & another *vs.* FEDERATED DEPARTMENT
STORES, INC.

Suffolk.    September 20, 1973. — December 4, 1973.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER,
& HENNESSEY, JJ.

*Agency,* Scope of authority or employment. *Assault.*

Review of Massachusetts cases dealing with the question of an employer's
liability for a wilful assault by his employee. [345-349]

In order to recover damages from an employer for injuries resulting from
an assault by his employee, it must be shown that the assault was in
response to conduct of the injured person which was presently interfer-
ing with the employee's ability successfully to perform his duties;
liability on the part of the employer is not established by merely showing
that the employee believed he was acting in his employer's interest and
furthering his employer's work. [349-350]

A finding of liability on the part of a department store to a shopper who
was injured by an assault by a porter employed by the store was not war-
ranted where there was evidence that a cart which the porter was push-
ing through the aisles sideswiped the shopper, that after examining
goods on display she proceeded down an aisle, approached the porter as
he was waiting for an elevator in an area having sufficient room between
him and the other side of the aisle for the shopper to pass without inter-
fering with his duties, that she said "If you would say, 'excuse me,'
people could get out of your way," that she hit the porter just before he
struck her as he was attempting to pass by her without incident, and
where he testified that "[w]hen he slapped her he would not call it an in-
stance when she had been in his way." [350-351]

TORT. Writ in the Superior Court dated November 6, 1968.
The action was tried before *Coddaire*, J.

*Sydney Berkman* (*Carl K. King* with him) for the plain-
tiffs.

*Thomas D. Burns* (*Mitchell J. Sikora, Jr.,* with him) for
the defendant.

TAURO, C.J.    This is an action in tort by the plaintiff
Bertha Miller for personal injuries intentionally inflicted on

her by an employee of the defendant Federated Department Stores, Inc. (Federated), while shopping in Filene's, Federated's downtown Boston store. Her husband, in other counts, seeks consequential damages.[1]

A jury returned verdicts for the plaintiffs on counts 1 and 3 against Federated and on counts 5 and 6 against the employee. There were verdicts for Federated on counts 2 and 4. The case was before the Appeals Court and is before us solely on Federated's bill of exceptions, and the only issue presented was whether the trial judge erred in denying its motion for directed verdicts on counts 1 and 3. The counts against the employee were not before the Appeals Court and are not before us. The exceptions were sustained by the Appeals Court,      Mass. App. Ct.      (1973),[a] and the case is here on the plaintiffs' application for further appellate review. See G. L. c. 211A, § 11, inserted by St. 1972, c. 740, § 1; S.J.C. Rule 3:24, § 7, 359 Mass. 838 (1972).

First, the plaintiffs argue that the Appeals Court decision concerning Federated's motion for directed verdicts is not based on the evidence most favorable to the plaintiffs. See, e.g., McFaden v. Nordblom, 307 Mass. 574 (1940). The plaintiffs contend that the court ignored certain evidence favorable to them, specifically the testimony of the Federated employee, William Melnick, who committed the assault. Second, the plaintiffs argue that the Appeals Court erred in its interpretation of the substantive law on the question of an employer's liability for the intentional torts of his employee. The Appeals Court held that Melnick's assault on Mrs. Miller was not committed within the scope of his employment and that the circumstances of this case can be distinguished from those in earlier cases where liability was imposed on the employer. The plaintiffs contend that the deci-

[1]The declaration, as amended, contains four counts against Federated and two counts against the employee. Count 1 is against Federated based on Federated's liability for acts of its employee acting within the scope of his employment; count 2 is against Federated based on Federated's negligence in hiring and keeping in its employ the employee; and count 5 is against the employee for assault and battery. In counts 3, 4 and 6, the plaintiff husband seeks consequential damages.

[a]294 N. E. 2d 474.

sion of the Appeals Court is inconsistent with recent decisions of this court holding the employer liable, particularly *Rego* v. *Thomas Bros. Corp.* 340 Mass. 334 (1960), and *Hobart* v. *Cavanaugh,* 353 Mass. 51 (1967), and assert that "[i]n fact . . . the instant case is indistinguishable from [the] *Rego* and *Hobart* [cases]." We disagree.

We summarize the pertinent testimony as it relates to these issues. On the morning of May 8, 1968, Mrs. Miller was shopping in Federated (Filene's basement store) in Boston. William Melnick was on the premises in his capacity as a porter, his duties consisting of cleaning the floors and emptying trash containers. In connection with his work, he had a cart, roughly four feet long and four feet wide, which he used as a receptacle. On his janitorial rounds, Melnick pushed this cart through the aisles between the merchandise counters. When it was a particularly busy day and the aisles were crowded, it was sometimes necessary, in order to get all his work done, that he "sideswipe" a few customers, but not with enough force to do any harm. May 8 was a particularly busy day. He remembered that on that morning he "went through a customer," felt a sharp pain in his leg, turned around, and saw Mrs. Miller looking at him. Mrs. Miller testified that as she stood at a merchandise counter, she felt something hit her ankle, looked over her shoulder, and saw Melnick pushing a canvas cart. She said she had never before seen Melnick pushing a canvas cart nor had she ever seen him prior to this incident.

It is at this chronological point that there is a material divergence in the testimony of Mrs. Miller and Melnick. According to Mrs. Miller, after the "sideswipe" episode, she returned to examining the goods on display, remained there for five or ten minutes, and then proceeded down the aisle. About two feet from the end of the counter she looked straight ahead and saw Melnick standing in the middle of the aisle at the end of the counter, seemingly waiting for the elevator. It being necessary to pass him, and there being sufficient room to do so, Mrs. Miller approached, stopping, however, to say, "If you would say, 'excuse me', people

could get out of your way." Mrs. Miller testified that she said this in a "[l]adylike" manner, manifesting no hostility. Nevertheless, Melnick pushed her on the left shoulder. She told him to take his hands off her. He then punched her in the face, knocking her to the ground.

In his testimony Melnick did not deny that he hit Mrs. Miller, but he gave a different story as to the events leading up to the incident. He testified that Mrs. Miller was no stranger. Before May 8, he had seen her in Filene's approximately a dozen times. On most of those occasions, she remained in the way of his cart as he made his rounds, blocked his progress and caused him delay. Moreover, Melnick testified, she had hit him during approximately eight of these encounters, and that once she said, "You lost my purse. You stole my purse." Thus, according to Melnick, the May 8 incident was just one in a series of difficulties he had with Mrs. Miller. He testified that during the few moments immediately following his "sideswipe" there was no more contact with Mrs. Miller and that he had gone about his work. He made his way up the right hand side of the aisle, stopping at various counters and emptying cans of debris into his cart. When he reached the end of the counter, he reversed his direction and began to perform the same duties on the left side of the aisle. About midway down the aisle, he saw Mrs. Miller standing there, looking "very determined." There was room to pass her, and he tried to go to the right of her as slowly as possible, at the same time asking her, "Please, stop kicking me, please stop hitting me." Melnick testified that in spite of this, Mrs. Miller struck his face, shoulder and chest. It was at this point that he struck Mrs. Miller. His final statement on the witness stand was that "[w]hen he slapped her, he would not call it an instance when she had been in his way."

On this evidence, the Appeals Court held that the trial judge erred in denying the motion for directed verdicts in favor of Federated.        Mass. App. Ct.        (1973).[b] The Ap-

[b]294 N. E. 2d 474.

peals Court, in a rescript opinion, gave a brief recitation of the facts which may be fairly characterized as a summary of Mrs. Miller's testimony without reference to Melnick's version of the incident. The Appeals Court's conclusion was concise: "In our examination of the evidence in its aspect most favorable to the plaintiffs, we are unable to find that the unprovoked assault by the employee on the plaintiff Bertha Miller was within the scope of his employment and in furtherance of the employer's work." *Id.*

The plaintiffs argue that the Appeals Court decision was not based on an assessment of all the evidence, viewed most favorably to the plaintiffs. From that court's failure to incorporate Melnick's version of the assault incident in its recitation of facts, the plaintiffs infer that Melnick's testimony was disregarded. This testimony, they contend, even though contradictory in large part to Mrs. Miller's own testimony, can be viewed as favorable to their position, and thus, under *McFaden* v. *Nordblom,* 307 Mass. 574 (1940),[2] it should have been considered by the court. In short, they argue that Melnick's testimony, to the effect that Mrs. Miller had obstructed him in the past and was harassing him on the morning when the assault occurred, when considered with his uncontradicted statements that on busy days he was under pressure and had to "sideswipe" customers on occasion, warranted a finding by the jury that the assault was for the purpose of preventing interference with Melnick's work and was thus in furtherance of his employer's work.

The mere fact that the employee's testimony, in this respect, was not mentioned in the rescript opinion of the Appeals Court does not require a conclusion that it was not considered. The short answer is that the Appeals Court decision states that it is based on "our examination of the evi-

---

[2]There the court held: "[T]he plaintiff is entitled to have the evidence viewed in the aspect most favorable to her, and, ordinarily, she is not estopped from relying upon the testimony of other witnesses which is more favorable than her own in establishing the liability of the defendant. . . . The rule is of general application. A plaintiff might honestly be mistaken in his narration of the physical facts constituting his cause of action and may properly ask a jury to find as true the facts as set forth in the testimony of the other witnesses." 307 Mass. at 575.

dence in its aspect most favorable to the plaintiffs." This reference by the Appeals Court is necessarily to the entire record which the court had before it, which, our own examination reveals, fully recites the testimony of both Mrs. Miller and Melnick. Thus, there is no basis for the contention that the Appeals Court failed to give full consideration to "favorable" portions of the Melnick testimony.

We now come to the central issue in this case, whether the jury, on the basis of all the evidence most favorable to the plaintiffs, rationally could have found that Melnick was acting within the scope of his employment when he struck Mrs. Miller. An evaluation of all the evidence, including Melnick's testimony, leads us to conclude that such a finding was not warranted and, therefore, that Federated was entitled to directed verdicts on counts 1 and 3.

This court has on numerous occasions dealt with the substantive question of an employer's liability for the intentional torts of his employee.[3] In a leading early case, *Levi* v. *Brooks,* 121 Mass. 501, 505 (1877), it was said that "[t]he test of the liability of the master is, that the act of the servant is done in the course of doing the master's work, and for the purpose of accomplishing it." In that case this court imposed liability on an employer, the owner of a furniture store, for assault committed by his workers in the course of their repossessing furniture from customers delinquent in their payments. Specifically, the assaults arose out of a dispute in the customer's home as to the identity of pieces of furniture

---

[3] The discussion which follows relates only to what may be characterized as the general rule. Common carriers have been held to a more stringent degree of responsibility for assaults by their employees on passengers. See, e.g., *Gilmore* v. *Acme Taxi Co.* 349 Mass. 651 (1965). Relevant but not central to the instant case are those decisions dealing with situations where an employee's job by definition contemplates the use of force, e.g., a bartender or bouncer (*Orasz* v. *Colonial Tavern, Inc.* 362 Mass. 881 [1972]); "driver's helpers" employed during labor disputes to ensure delivery of an employer's merchandise (*Suckney* v. *Bert P. Williams, Inc.* 355 Mass. 62 [1968]), where there is often less difficulty in determining whether an employee's use of force occurred in the course of his employment. Our primary focus is on the law applicable to assaults committed by employees whose duties do not normally involve the use of force on third persons. And although we discuss in this opinion early cases which may be said to concern contemplating the use of force, *Levi* v. *Brooks,* 121 Mass. 501 (1877) (furniture repossessors), *Zerngis* v. *H. P. Hood & Sons,* 255 Mass. 603 (1926) (railroad car attendant), their special importance is in their articulation and application of the general rule.

not paid for, and thus subject to repossession, and occurred as the workers were attempting to remove disputed items. In a more recent case, *Rego* v. *Thomas Bros. Corp.* 340 Mass. 334 (1960), the court, applying the *Levi* test, held liable a corporation engaged in highway construction work when one of its employees struck a person who had interceded in an argument between the employee and a landowner as to the removal of large boulders which had accidentally rolled onto the landowner's property in connection with the corporation's excavation. Moments before the assault, the employee, pursuant to instruction, but contrary to the landowner's wishes, was in the process of removing the boulders. When the plaintiff, the landowner's uncle, arrived at the scene, loudly protesting, he was struck twice in the jaw by the employee.

*Hobart* v. *Cavanaugh,* 353 Mass. 51 (1967), also applied the *Levi* test in holding an employer liable. The employer, owner of a trucking firm, had for several years kept his trucks at a gasoline station operated by the plaintiff. The employee was a driver who reported daily at the gasoline station to pick up his truck. He assaulted the plaintiff one morning immediately after they had had an argument as to when the truck was supposed to be fully fueled and ready for pickup, the driver complaining that he had been unnecessarily delayed. In upholding the jury's verdict against the employer, this court concluded, "It could be found . . . that . . . [the employee] was impatient that gasoline had not already been put into his employer's truck; and that he struck the blow because of the delay . . . .. Thus viewed the evidence meets the test stated in *Levi* v. *Brooks* . . . and most recently applied in *Rego* v. *Thomas Bros. Corp.* " 353 Mass. at 52-53.

In *Zerngis* v. *H. P. Hood & Sons,* 255 Mass. 603 (1926), the employer corporation was held responsible for injuries caused to a fourteen year old girl as a result of her having been struck by a piece of ice thrown by an employee. The employee's primary duty was to watch over a stationary railroad car containing ice and milk belonging to the employer.

This court concluded that, "[f]rom the . . . evidence that . . . a large number of children was close to the car and picking up the defendant's ice, and that the crowd of children was interfering with the defendant's employee, the jury could have found that . . . [the employee] was trying to drive the children away and was doing this in the course of his employer's work and for the purpose of accomplishing it." 255 Mass. at 604-605.

To be distinguished from the *Levi, Zerngis, Rego* and *Hobart* cases are those in which the employer was not held liable for an assault committed by his employee. *Fairbanks* v. *Boston Storage Warehouse Co.* 189 Mass. 419 (1905), is a significant early decision in this category. There the employee, an operator of a warehouse company's elevator, punched a customer after having been asked repeatedly by the customer to bring the elevator up to his floor so that he could get back down to the ground level. In the absence of any evidence as to the reasons for the employee's conduct, this court simply concluded that "[w]e do not see how it can be said that the assault was committed as a means or for the purpose of performing the work which . . . [the employee] was employed to do." 189 Mass. at 420. In *Brown* v. *Boston Ice Co.* 178 Mass. 108 (1901), an employee of an ice company struck a small boy with an axe handle to punish him for having broken the axe, the ice company's property. In sustaining a directed verdict for the ice company, the court rejected the plaintiff's argument that the jury could have found that the employee acted for the purpose of making it easier for him to deliver ice in the future, and thus was acting within the scope of his employment when the assault took place. "It is not within the scope of the authority of a servant, to whose custody his master's property has been confided, to undertake to secure it from future injury by committing the illegal act of inflicting personal chastisement on persons who have *done damage to it in the past*" (emphasis added). 178 Mass. at 110.

*Sullivan* v. *Crowley*, 307 Mass. 189 (1940), presents a clear instance of an assault committed by an employee outside the

scope of his employment. The employer owned a tavern in which the employee worked as a bartender. The plaintiff entered the tavern, drank a few glasses of beer, and dozed off to sleep. The bartender, with the help of another patron, then gave the sleeping plaintiff a "hot foot." In sustaining a directed verdict for the defendant tavern owner, this court held that "nothing in the . . . facts . . . [would] warrant a finding that the acts of the bartender . . . had any connection with the work he was hired to do. . . . The act was done solely for a purpose of his own." 307 Mass. at 190.

From these two lines of cases, with particular emphasis on the *Rego* and *Hobart* decisions, the plaintiffs extrapolate and argue for the adoption of a subjective test for determining the employer's liability, namely, did the employee at the time of the assault intend to further, and believe he was furthering, his employer's work? Federated, on the other hand, contends that evidence of an employee's motive or subjective intent is considered only as one criterion in a larger objective standard and that is one which seeks to determine whether the assault can reasonably be viewed to have arisen from, or contributed to, the employer's work.

While our decisions have been less than uniform or precise in defining the elements which are germane to the question of an employer's liability for a wilful assault by his employee, they cannot be read to support the plaintiffs' position.

We do not say that an employee's subjective intent in committing an assault is an irrelevant factor. It is important in the sense that it sheds light on the issue whether the employee in his own mind was acting in what he thought were his employer's interests and not, as has been the case, "to gratify personal animosity, or to carry out an independent purpose of his own." *Genga* v. *Director Gen. of Railroads,* 243 Mass. 101, 106 (1922). But as the *Brown* case demonstrates, more important than the question of employee's subjective intent is whether the assault was committed as a result of the plaintiff's conduct which *at the time of the assault* was affecting the employee's ability to satisfactorily do his job.

The *Levi, Rego, Hobart* and *Zerngis* cases all involved

situations where the plaintiff was at the time frustrating the performance of the employee's duties. The workers in the *Levi* case struck the delinquent debtors when they attempted to prevent them from repossessing furniture which their employer had instructed them to remove. At the time of the assault in the *Rego* case, the employee was attempting to remove boulders pursuant to a superior's order but was being delayed by the plaintifff's loud protestations against his actions. And in the *Hobart* case, it is quite clear that the employee truck driver struck the gasoline station owner while the employee was being delayed in starting out on his day's assignments. The *Hobart* case differs from the *Rego* and *Levi* cases in that the employee was not, as a result of his assault, immediately better able to accomplish his work, since striking the plaintiff did not enable him to have his truck sooner. But the crucial common denominator in the three decisions is the relationship between the plaintiff's conduct and the frustration of the ability of the employee to perform his duties presently. The *Zerngis* case also fits this pattern. There, the railroad car attendant had the responsibility of keeping children away from the car and preventing them fron taking the company's ice and milk.

In cases where the employee's conduct did not create liability on the part of the employer, we find no relationship between the plaintiff's activity and the frustration of the employee's present ability to perform his job satisfactorily. In the *Fairbanks* case, the elevator operator struck a customer who had apparently done nothing more than to ask him to operate the elevator. In the *Brown* case, as has already been pointed out, the plaintiff, though having earlier broken an ice company axe, was not at the time of the assault interfering with the employee's ability to deliver ice. And *Sullivan* v. *Crowley,* 307 Mass. 189 (1940), is an obvious example when there was no connection between the bartender's duties and the assault.

For the purpose of clarification, in view of the seeming uncertainties in past decisions in this area, we hold that where a plaintiff seeks to recover damages from an employer

for injuries resulting from an employee's assault, merely establishing that the employee believed he was acting in the employer's interest, and believing that he was furthering his employer's work, is not sufficient to establish liability. To hold otherwise would render employers liable for the most irrational and misguided conduct which an employee might have thought he committed for the purpose of accomplishing his work. What must be shown is that the employee's assault was in response to the plaintiff's conduct which was presently interfering with the employee's ability to perform his duties successfully. This interference may be in the form of an affirmative attempt to prevent an employee from carrying out his assignments, as in the *Levi* and *Rego* cases, or in the failure to do acts necessary to enable the employee to begin or continue his assignments, as in the *Hobart* case. Assaults arising in either of these contexts constitute acts committed within the scope of employment, in that they stem from and directly relate to the frustration of the ability to perform on the assignments for which the employee is presently responsible.

We now apply our holding to the facts in the instant case. Since the narrow issue is centered on whether Federated was entitled to directed verdicts, our first task is to review the evidence most favorable to the plaintiffs. Mrs. Miller first argues that even if only her testimony is considered without regard to Melnick's testimony, a jury issue was present. We disagree. On the basis of her testimony, there was no evidence that Melnick's assault was in response to an interference on her part with his present ability to perform his duties successfully. According to her testimony Melnick was waiting for an elevator when she approached him. More importantly, there was sufficient room between Melnick and the other side of the aisle for her to pass without interfering with his duties. In short, at the time of the assault, her conduct was not in any way presently preventing Melnick from going about his work. While Melnick may have been annoyed or insulted by Mrs. Miller's remark, "If you would say, 'excuse me', people could get out of your way," that

circumstance alone does not justify imposition of liability on Federated. See *Fairbanks* v. *Boston Storage Warehouse Co.* 189 Mass. 419 (1905).

In the alternative, the plaintiffs argue that the jury could have accepted Melnick's statements that Mrs. Miller had obstructed him in the past and was harassing him on the day of the assault, and that he was under pressure on particularly busy days to get work done, and thus they could have rationally concluded that he assaulted her for the purpose of preventing her from interfering with his work. The weakness of this argument is that it is based on a highly selective, if not distorted, view of Melnick's testimony, and ignores to a substantial degree Mrs. Miller's own testimony.[4] The plaintiffs ignore, for example, Melnick's testimony that "[w]hen he slapped her he would not call it an instance when she had been in his way," and that just before he struck her, she hit him as he was attempting to pass by her without incident. Assuming that the facts urged for consideration by the plaintiffs could be adduced from the evidence, they did not warrant a jury finding which placed responsibility on Federated.

> *Exceptions sustained.*
> *Judgments for the defendant*
> *Federated Department Stores, Inc.*

---

[4]"[The plaintiff] has no . . . right to ask the jury to disbelieve his testimony concerning his knowledge, motives, purposes, emotions or feelings . . .. Testimony of that character is binding upon the party who gives it." *McFaden* v. *Nordblom,* 307 Mass. 574, 575 (1940), and cases cited.