David MANNING, Jr., Plaintiff-Appellant

v.

Ross GRIMSLEY and The Baltimore Baseball Club, Inc., Defendants-Appellees.

No. 80–1145.

United States Court of Appeals, First Circuit.

Argued Jan. 8, 1981.

Decided Feb. 27, 1981.

As Modified On Denial of Rehearing and Rehearing En Banc, March 19, 1981.

---

Robert S. Wolfe, Boston, Mass., for plaintiff-appellant.

William J. Gately, Jr., Boston, Mass., with whom Williams & Jackson, Boston, Mass., was on brief, for defendant-appellee The Baltimore Baseball Club, Inc.

Jeffrey M. Smith, Boston, Mass., with whom Paul T. Smith, and Harvey R. Peters, Boston, Mass., were on brief for defendant-appellee Ross Grimsley.

Before CAMPBELL, BREYER, Circuit Judges, and WYZANSKI,* Senior District Judge.

WYZANSKI, Senior District Judge:

In this diversity action involving the law of Massachusetts the plaintiff, complaining that he as a spectator at a professional baseball game was injured by a ball thrown by a pitcher, sought in a battery count and in a negligence count to recover damages from the pitcher and his employer. The district judge directed a verdict for defendants on the battery count and the jury returned a verdict for defendants on the negligence count. The district court having entered judgment for defendants on both counts, the plaintiff appeals from the judgment on the battery count.

In deciding whether the district court correctly directed a verdict for de-

---

* Of the District of Massachusetts, sitting by designation.

fendants on the battery count, we are to consider the evidence in the light most favorable to the plaintiff. That evidence was to the following effect.

On September 16, 1975 there was a professional baseball game at Fenway Park in Boston between the defendant, the Baltimore Baseball Club, Inc. playing under the name the Baltimore Orioles, and the Boston Red Sox. The defendant Ross Grimsley was a pitcher employed by the defendant Baltimore Club. Some spectators, including the plaintiff, were seated, behind a wire mesh fence, in bleachers located in right field. In order to be ready to pitch in the game, Grimsley, during the first three innings of play, had been warming up by throwing a ball from a pitcher's mound to a plate in the bullpen located near those right field bleachers. The spectators in the bleachers continuously heckled him. On several occasions immediately following heckling Grimsley looked directly at the hecklers, not just into the stands. At the end of the third inning of the game, Grimsley, after his catcher had left his catching position and was walking over to the bench, faced the bleachers and wound up or stretched as though to pitch in the direction of the plate toward which he had been throwing but the ball traveled from Grimsley's hand at more than 80 miles an hour at an angle of 90 degrees to the path from the pitcher's mound to the plate and directly toward the hecklers in the bleachers. The ball passed through the wire mesh fence and hit the plaintiff.

We, unlike the district judge, are of the view that from the evidence that Grimsley was an expert pitcher, that on several occasions immediately following heckling he looked directly at the hecklers, not just into the stands, and that the ball traveled at a right angle to the direction in which he had been pitching and in the direction of the hecklers, the jury could reasonably have inferred that Grimsley intended (1) to throw the ball in the direction of the hecklers, (2) to cause them imminent apprehension of being hit, and (3) to respond to conduct presently affecting his ability to warm up and, if the opportunity came, to play in the game itself.

The foregoing evidence and inferences would have permitted a jury to conclude that the defendant Grimsley committed a battery against the plaintiff. This case falls within the scope of Restatement Torts 2d § 13 [1] which provides, *inter alia*, that an actor is subject to liability to another for battery if intending to cause a third person to have an imminent apprehension of a harmful bodily contact, the actor causes the other to suffer a harmful contact. Although we have not found any Massachusetts case which directly supports that aspect of § 13 which we have just set forth, we have no doubt that it would be followed by the Massachusetts Supreme Judicial Court. § 13 has common law roots that precede the American Revolution, *Scott v. Shepherd*, 2 Wm.Bl. 892, 96 Eng.Rep. 525 (1773). It is supported by a substantial body of American cases conveniently noted in Prosser, Torts, 4th ed., 1971, pp. 32–34, of which *Singer v. Marx*, 144 Cal.App.2d 637, 301 P.2d 440, 443 (1956) is the one most clearly relevant to the case at bar. The whole rule and especially that aspect of the rule which permits recovery by a person who was not the target of the defendant embody a strong social policy including obedience to the criminal law by imposing an absolute civil liability to anyone who is physically injured as a result of an intentional harmful contact or a threat thereof directed either at him or a third person. See Prosser, *supra*. It, therefore, was error for the district court to have directed a verdict for defendant Grimsley on the battery count.

Grimsley contends that even if it was error for the district judge to have directed

1. The full text of § 13 provides:
   An actor is subject to liability to another for battery if
   (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
   (b) a harmful contact with the person of the other directly or indirectly results.

a verdict on the battery count for the defendants, the plaintiff cannot now recover on that count because he is collaterally estopped by the unappealed judgment for the defendants on the negligence count.

■ In Massachusetts, as elsewhere, where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is ordinarily conclusive between the parties in a subsequent action; but a judgment on one cause of action is not conclusive in a subsequent action on a different cause of action as to questions of fact not actually litigated and determined in the first action. Restatement Judgments § 68; *Com. v. Mondano*, 352 Mass. 260, 225 N.E.2d 318 (1967); *Drain v. Brookline Sav. Bk.*, 327 Mass. 435, 99 N.E.2d 160 (1951); *Wishnewsky v. Saugus*, 325 Mass. 191, 194–195, 89 N.E.2d 783 (1950).

■ Grimsley's contention is that in the negligence action there actually was litigated the issue whether Grimsley threw the ball intentionally in the direction of the bleachers, and that the jury determined as a fact that he did not intend to do so.

We shall assume that the foregoing issue was one of those litigated. But the record does not show that the jury determined as a fact that the defendant Grimsley did not throw the ball intentionally in the direction of the bleachers. As the case was submitted to it, the jury, in order to return a verdict for the plaintiff, would have been required impliedly to find both (1) that Grimsley intended to throw toward the bleachers, and (2) that a ball so thrown involved an unreasonable risk of injuring the plaintiff. Familiar principles of tort law, reflected in the judge's instructions to the jury [2], made the second factor as essential as the first. Cf. Restatement Torts 2d § 284(a). *LaClair v. Silberline Mfg. Co.*, Mass., 393 N.E.2d 867, 871 (1979); *Goldstein v. Gontarz*, 364 Mass. 800, 805, 309 N.E.2d 196 (1974); *Kane v. Fields Corner Grille, Inc.*, 341 Mass. 640, 641–643, 171 N.E.2d 287 (1961). In returning a general verdict for the defendants the jury left us uninformed whether the plaintiff failed to persuade them on the first or the second of the issues. So far as we know, the jury may have determined that Grimsley threw the ball intentionally in the direction of the bleachers, but the jury may have been of the view that such a throw presented no unreasonable risk to the plaintiff because he was located behind a net intended to protect him. Since the defendant Grimsley has not borne the burden of proving that the judgment in the negligence action was based on the determination of the factual question whether Grimsley threw the ball intentionally in the direction of the bleachers, that judgment is not conclusive in the

**2.** The trial judge in reference to Grimsley's potential negligence said merely the following:

> ... You have in mind that in his complaint David Manning alleged that while he was lawfully a spectator watching a Red Sox/Orioles game in Fenway Park he was injured because the defendant, Ross Grimsley, threw a baseball in a careless and negligent manner so that it struck Mr. Manning, who was then sitting in the bleachers. [Tr. vol. 4, pp. 93–94]
>
> ... When I talk about negligence, what I mean is the failure to exercise ordinary or due care. That is what the plaintiff has to establish by a preponderance of the evidence to your unanimous satisfaction; that is, he has to establish that Ross Grimsley at the time in question failed to exercise ordinary care or due care.
>
> The words "ordinary care" or "due care" mean the care that a reasonably prudent person would use under circumstances similar to those shown to have existed by the evidence in this case.
>
> The law doesn't say how a reasonably careful or prudent person would act under those circumstances. That is for you to decide. In other words, you jurors are the barometer of what is the care that a reasonably prudent person in the situation that Mr. Grimsley was in—what a reasonably prudent pitcher would have done in a like circumstance. You jurors have to decide that.
>
> The degree of care required of a defendant is reasonable care and due care—that standard never varies—but the care which it is reasonable to require of a defendant varies with the danger involved and is proportionate thereto. In other words, the greater the potential danger, the greater the care which must be exercised by a reasonably prudent person, but always remember that the standard is the same: reasonable care. [Tr. vol. 4, pp. 95–96] (Emphasis added.)

battery action. Restatement Judgments § 68 comment 1.

■ Nor is the plaintiff estopped by the rule that "where a judgment on the merits is rendered in favor of the defendant, the plaintiff is precluded from subsequently maintaining an action on the same cause of action although he presents a ground for the relief asked other than those presented in the original action, except where the defendant's fraud or misrepresentation prevented the plaintiff from such other ground in the original action." Restatement Judgments § 63 and comment c. *Ratner v. Rockwood Sprinkler Co.*, 340 Mass. 773, 776, 166 N.E.2d 694 (1960); *Willett v. Webster*, 337 Mass. 98, 102, 148 N.E.2d 267 (1958); *Mackintosh v. Chambers*, 285 Mass. 594, 596–597, 190 N.E. 38 (1934); *Cotter v. Boston & Northern Street Railway*, 190 Mass. 302, 76 N.E. 910 (1906). The obvious purpose of the rule is to coerce the plaintiff to present all of his grounds of recovery in the first proceeding so as not to subject the defendant and the court to the burden of two different actions involving a single invasion of the plaintiff's primary right to be free from injury to his person. *See* Restatement Judgments § 63 comment a. Hence, under that rule a judgment on the merits rendered in favor of a defendant in an action alleging *merely* that his negligence caused the plaintiff to suffer personal injuries precludes the plaintiff from a subsequent action alleging that defendant's intentional conduct caused the identical injury. *Cotter v. Boston & Northern Street Railway, supra* (the facts of which serve as the unacknowledged source of Restatement Judgments § 63 comment c).

The case at bar does not fall within the letter or the purpose of the rule. Here the plaintiff brought a complaint alleging that a single invasion of his right to be free from injury to his person was subject to recovery on two alternate grounds: battery or negligence. Thus the battery claim was, in the words of Restatement Judgments § 63, "presented in the original action." The reason that the jury did not consider the plaintiff's battery claim for recovery was not

that he failed to allege it, but that the trial judge erroneously kept the claim from them. Under such circumstances, the plaintiff, after the trial judge's error has been corrected, is not precluded from maintaining that battery count.

It follows that the plaintiff is entitled to a vacation of the judgment on the battery count in favor of the defendant Grimsley.

The plaintiff is also entitled to a vacation of the judgment on the battery count in favor of the Baltimore Club, Grimsley's employer.

■ In Massachusetts "where a plaintiff seeks to recover damages from an employer for injuries resulting from an employee's assault . . . [W]hat must be shown is that the employee's assault was in response to the plaintiff's *conduct* which was *presently interfering with the employee's ability to perform his duties successfully*. This interference may be in the form of an *affirmative attempt to prevent an employee from carrying out his assignments*, as in the *Levi* and *Rego* cases . . ." *Miller v. Federated Department Stores, Inc.*, 364 Mass. 340, 349–350, 304 N.E.2d 573 (1973). (Emphasis added.)

■ The defendant Baltimore Club, relying on its reading of the *Miller* case, contends that the heckling from the bleachers constituted words which annoyed or insulted Grimsley and did not constitute "conduct" and that those words did not "presently" interfere with his ability to perform his duties successfully so as to make his employer liable for his assault in response thereto.

Our analysis of the *Miller* case leads us to reject the contention. There a porter, whose duties consisted of cleaning the floors and emptying the trash cans in Filene's basement store, slapped a customer who had annoyed or insulted him by a remark that "If you would say 'excuse me', people could get out of your way." The Massachusetts Supreme Judicial Court held that while the employee "may have been annoyed or insulted by" the customer's remark, "that circumstance alone does not

justify imposition of liability on" the employer. 364 Mass. 350–351, 304 N.E.2d 573.

*Miller's* holding that a critical comment by a customer to an employee did not in the circumstances constitute "conduct" interfering with the employee's performance of his work is obviously distinguishable from the case at bar. Constant heckling by fans at a baseball park would be, within the meaning of *Miller*, conduct. The jury could reasonably have found that such conduct had either the affirmative purpose to rattle or the effect of rattling the employee so that he could not perform his duties successfully. Moreover, the jury could reasonably have found that Grimsley's assault was not a mere retaliation for past annoyance, but a response to continuing conduct which was "presently interfering" with his ability to pitch in the game if called upon to play. Therefore, the battery count against the Baltimore Club should have been submitted to the jury.

*Vacated and remanded for a new trial on the battery count.*

## ON PETITIONS FOR REHEARING

The defendants petition for rehearing on the ground that "there was no evidence whatsoever that Grimsley appeared to be irritated on any of the occasions when he looked up at the stands."

Our re-examination of the record discloses the following.

The witness Murphy who was a spectator in the bleachers testified that "On several occasions I saw him [Grimsley] immediately respond to some verbal outcries by looking up into the stands directly at people, myself included." (A.136) "The times that I saw Mr. Grimsley look into the stands were the times immediately following verbal remarks." (A.137) Murphy also testified on direct examination that when Grimsley in the critical pitch "released the ball, he had an angry, frustrated look on his face, as though he were releasing tension." (A.142) On cross-examination, Murphy admitted that he did not make the observation of the face "right at the moment" he thought the ball was coming toward him (A.153) or "be-

tween the time" he saw Grimsley releasing the ball and the time the ball was picked up (A.154), but Murphy never withdrew his statement that when Grimsley released the ball he had an angry look.

The witness Goldsmith, who also was a spectator in the bleachers was asked "And did you have occasion to observe Mr. Grimsley respond ... to this heckling." Goldsmith answered "He looked into the crowd, not specifically at me, I don't think, but he looked up at the crowd a number of times." (A.239) On cross-examination Goldsmith added "He looked right directly at us. He didn't just look up into the stands." (A.245) "It looked an awful lot like he was looking right at us, and it just so happens it was right after the comments we yelled. So I assumed he was looking at us."

It is our opinion that on that testimony the jury could reasonably have found that some, if not all, of the times Grimsley looked toward the bleachers, he did so because he was irritated at the hecklers.

In the interest of accuracy, we strike from page 2, lines 18–20, the sentence reading "On several occasions Grimsley, apparently irritated, looked over at the hecklers." and we substitute "On several occasions immediately following heckling Grimsley looked directly at the hecklers, not just into the stands." And we strike from page 2, lines 30–31, the clause reading "that he appeared to be irritated at the hecklers," and we substitute "that on several occasions immediately following heckling he looked directly at the hecklers, not just into the stands."