Botsford, J.
INTRODUCTION
In December, 1995, the plaintiff Donald Harris prevailed before a jury in this action to recover for injuries he sustained as a result of an assault on him by the defendant Delmar Devos. The jury found Devos was liable, and determined as well that at the time of the assault, Devos was working in the scope of his employment for the defendant Central Beef Company (Central Beef). Accordingly, the jury’s verdict rendered Central Beef liable to Harris under the doctrine of respondeat superior. Central Beef has now moved for judgment notwithstanding the verdict under *560 Mass.R.Civ.P. 50(b). For the reasons discussed below, the motion is denied.
DISCUSSION
1. Procedural Issue
Central Beef moved for a directed verdict at the close of the plaintiff Harris’ case. The motion was denied at that time. Thereafter, Central Beef rested without putting on any evidence. Central Beef did not renew its directed verdict motion at the close of the evidence.
After the jury’s verdict, Central Beef filed a timely motion for judgment notwithstanding the verdict pursuant to Mass.R.Civ.P. 50(b). I denied the motion without prejudice on the grounds that Central Beef had not renewed its original motion for a directed verdict when the evidence formally closed. Central Beef then responded with the argument that it was not required to do so since it had rested after its original motion for a directed verdict was denied. I agree.
Rule 50 of the Massachusetts Rules of Civil Procedure is patterned after Fed.R.Civ.P. 50, and the Massachusetts courts follow the Federal interpretation of its rule. See Martin v. Hall, 369 Mass. 882, 884-85 and n.2 (1976). See also Foley v. Polaroid Corp., 400 Mass. 82, 102 n.1 (1987) (Liacos, J., concurring). As a general matter, a party must move for a directed verdict under Mass.R.Civ.P. 50(a) at the close of all the evidence in order to preserve its right to move for judgment notwithstanding the verdict under Rule 50(b) if the case is submitted to the jury and decided adversely to the moving party. See Mass.R.Civ.P. 50(b), first sentence; Rule 50(b), Reporters’ Notes. Thus, if a defendant moves for a directed verdict at the close of the plaintiffs case, and after denial of the motion proceeds to offer evidence, the defendant waives its right to move for a judgment notwithstanding the verdict thereafter if it failed or declined to renew its directed verdict motion at the close of the evidence. See Martin v. Hall, supra, 369 Mass. at 884-85.
The Federal courts have distinguished the type of case just described and one where a defendant moves for a directed verdict at the close of the plaintiffs evidence, but then rests without putting in any evidence of its own. In this latter situation, the failure to renew the directed verdict motion at the close of the evidence is not fatal to consideration of a later motion for judgment notwithstanding the verdict, presumably because there was no evidence beyond what the plaintiff introduced. See Beaumont v. Morgan, 427 F.2d 667, 670 (1st Cir. 1970). See also Wells Real Estate v. Greater Lowell, 850 F.2d 803, 810 n.7 (1st Cir. 1988).
It appears reasonable to assume that the Massachusetts appellate courts would apply this same interpretation to our rule. See King v. G&M Realty Corp., 373 Mass. 658, 659-60 n.3 (1977).[2] Accordingly, since Central Beef rested after presenting its motion for a directed verdict at the end of the plaintiffs case, its timely-filed motion for judgment notwithstanding the verdict is properly here for review on the merits.
2. The Merits
The question to be asked in reviewing a motion for judgment notwithstanding the verdict is “whether anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.” Boothby v. Texon, Inc., 414 Mass. 468, 469 (1993) (citations omitted), and cases cited. See Tobin v. Norwood Country Club, 422 Mass. 126, 127 (1996). In this case, the question is close, but I conclude the answer is yes.
Considered in the light most favorable to the plaintiff, the evidence at trial indicated the following. The defendant Devos was employed as a salesman for Central Beef, working in a supervisory capacity in the export division. On the night of August 18, 1991, Devos was in Boston entertaining clients of Central Beef — a family of three from Mexico and a man from Turkey. Devos met the clients at the Park Plaza Hotel in the evening for drinks, and then engaged to take them out for dinner. Through the hotel, he arranged to rent a limousine in order to show the company’s clients some sights of Boston and to bring them to a restaurant. The plaintiff Harris owned the limousine, and was its driver. Harris picked the Devos party[3] up at the hotel around 8:00 p .m., took them on a tour, and dropped them off at a restaurant in the North End around 9:00 p.m. Harris and Devos arranged that Harris would pick the group up at 11:00 p.m., but Harris gave Devos a telephone number where he could be reached if Devos wanted him to come earlier. The party finished dinner somewhere around 10:30, and Devos as well as another Central Beef employee repeatedly (six times) telephoned the number given by Harris to have him come early, but were unable to reach him; apparently Harris’ pager was not working. Harris arrived at the restaurant somewhat after 11:00, having learned from his mother that Devos had been trying to reach him earlier. The Central Beef party was waiting for him on the sidewalk, and he “screeched” to a stop next to them. Harris jumped out of the car, and said angrily to Devos, “you shouldn’t have spoken to my mother that way.”[4] He and Devos had some further sharp words, and then the party took off. Devos was angry at Harris because he believed the delay in Harris’ arrival back at the restaurant interfered with his clients’ enjoyment of the evening and therefore with the evening’s success from a business relations perspective. Harris was driving quite fast on the trip back to the hotel, and Devos’ other associate asked Devos to ask that he slow down because the speed was causing discomfort to the clients. Devos put his hand on Harris’ shoulder and told him to slow down. Harris said, “get your fucking hand off my shoulder," but it appears Harris did slow down.
While still in the limousine, Devos told Harris that he, Harris, owed an apology to the four clients; Harris declined to apologize, and said something to the effect that he simply wanted Devos’ credit card to arrange for payment for the evening. Soon thereafter, the *561 limousine arrived at the hotel. Harris opened the passenger door, the clients got out, and they walked into the hotel. Devos also got out, reached into the car from the driver’s side and took Harris’ keys.
Both Harris and Devos then went inside the hotel lobby, where Harris notified someone working at the desk that Devos had his keys. An argument between Harris and Devos ensued, in the lobby, with Devos continuing to demand that Harris apologize to the clients , and Harris demanding his keys. It is not clear where the clients from Mexico were at that point, but at least the man from Turkey could be found to have been in the vicinity of the argument, and listening to it.
At some point, in response to the insistence of the hotel staff, Devos threw Harris’ keys on the floor; he did not want to hand Harris the keys because he felt Harris had embarrassed him in front of his clients and colleagues. Harris stated that he was now going to call the police, and Devos then hit Harris, knocking him to the ground. Devos then jumped on top of Harris to hold him. Hotel security guards removed Devos from Harris, who got up with the words, “Now, I’m going to kick your ass.” In response, Devos thrust his foot out, and kicked Harris in the eye. Harris fell back down, and an ambulance was called. Harris sustained a fracture to the orbit of his eye, as well as a broken nose.[5]
All the evening’s entertainment on August 18,1991, from the drinks at the hotel to the restaurant bill to the limousine, were paid for by Central Beef. Devos spoke about the incident with his superior, one Lang, whom he identified as the head or owner of Central Beef. However, the company did not discipline Devos and continued to employ him at the time of trial in 1995. Devos’ associate, Tejeda, who could have been found to be somewhat involved as well in the dispute with Harris, was not disciplined either, and worked for Central Beef until 1993 when he got abetter job. Devos testified that he got into the fight with Harris because he perceived Harris as interfering with his job of successfully entertaining the company clients.
There is no question in this case that Devos committed an intentional assault and battery on Harris. (See note 5 above.) As Devos’ employer, Central Beef may be liable for this intentional tort of its employee if the act was committed in the scope of his employment. Worcester Ins. Co. v. Fells Acre Day School, Inc., 408 Mass. 393, 404 (1990). To determine whether an employee’s conduct falls within the scope of his employment, one looks to whether (1) the conduct is of the type he is employed to perform; (2) it occurs within “the authorized time and space limits” of the employee’s job; and (3) “it is motivated, at least in part, by a purpose to serve the employer.” Wang Laboratories, Inc. v. Business Incentives, Inc., 398 Mass. 854, 859 (1986). Where the intentional tort involves a physical assault
[t]he essential element that must be shown “is that the employee’s assault was in response to the plaintiffs conduct which was presently interfering with the employee’s ability to perform his duties successfully. This interference may be in the form of an affirmative attempt to prevent an employee from carrying out his assignments ... in the failure to do acts necessary to enable the employee to begin or continue his assignments . .. Assaults arising in either of these contexts constitute acts committed within-the scope of employment, in that they stem from and directly relate to the frustration of the ability to perform on the assignments for which the employee is presently responsible.”.
Worcester Ins. Co. v. Fells Acres Day School, Inc., supra, 408 Mass. at 404-05, quoting Miller v. Federated Dep't Stores, Inc., 364 Mass. 340, 350 (1973) (citations omitted).
There is no question that Devos’ entertainment of clients on August 18, 1991, including the engagement of a limousine, was within the scope of his duties as a salesman for Central Beef. The evidence at trial would further support a finding that Devos was acting within the authorized time and space of his employment when he had his confrontation with Harris, given the broad discretion he had with respect to entertaining Central Beefs clients. And the evidence was also sufficient for the jury to conclude that in getting into a fight with Harris, Devos was motivated at least in part by the goal of serving his employer: Devos testified in substance that he struck Harris because of his frustration and anger over what he perceived as Harris’ interference with Devos’ ability to leave the company’s clients with a positive impression of the evening, and thereby of the company Devos represented; the jury were entitled to credit this testimony. See Wang Laboratories, Inc. v. Business Incentives, Inc., supra, 398 Mass. at 859-61. Finally, the fact that Devos’ superior, the individual who was identified as owning Central Beef, was aware of the incident and continued to employ Devos and Tejeda without any disciplinary measures being taken is some evidence that Central Beef ratified the employees’ conduct. See Pinshaw v. Metropolitan District Comm’n, 402 Mass. 687, 695-96 (1988).
Where a claim is made that an employee’s assault was within the scope of his employment, the Miller case emphasizes the need for proof that the conduct causing the employee to commit the assault was presently interfering with the employee’s performance of his duties:
[M]ore important than the employee’s subjective intent is whether the assault was committed as a result of the plaintiffs conduct which at the time of the assault was affecting the employee’s ability to perform his job.
Miller, 364 Mass. at 351. Central Beef argues that when Devos actually struck Harris, nothing that Harris was doing was affecting Devos’ present performance of his job, since at least some of the clients (the Mexican family) apparently had already left the area, and there were no further plans for Devos to entertain or be with any of the clients that night.
*562 The difficulty with the argument is that it dissects too finely what the jury could reasonably find to have been a continuous series of events beginning with Harris’ late arrival at the North End restaurant. The evidence, considered in favor of Harris, could be found to support a finding that Harris’ delayed and “screeching” arrival, sharp tongue and too-fast driving constituted acts that prevented Devos from “continu[ing] his assignment!]” of successfully entertaining Central Beefs clients, that Harris’ refusal to apologize to the clients exacerbated the situation, and that the assault, occurring right as the limousine completed the trip back to the hotel, “stem[med] from and directly relate [d] to the frustration of the ability to perform on the assignments for which [Devos] was presently responsible.” Worcester v. Fells Acre Day School, Inc., supra, 408 Mass. at 405, quoting Miller, 364 Mass. at 350. See Hobart v. Cavanaugh, 353 Mass. 51, 52-53 (1967) (employee truck driver assaulted plaintiff after learning that plaintiff had not yet filled truck employee was to drive; employee’s assault could be found to have been committed because of anger and frustration at delay, and was within the scope of his employment).
In sum, I conclude that there was sufficient evidence to permit the jury to find that at the time Devos committed the assault on Harris, he was acting within the scope of his employment. Accordingly, Central Beefs motion for judgment notwithstanding the verdict is denied.
ORDER
For the reasons discussed above, the motion for judgment notwithstanding the verdict of Central Beef Company is DENIED.

In the King case, the court stated the following in the footnote cited in the text:
The defendant moved for a directed verdict at the close of the plaintiffs case. The motion was denied. The defendant then put in a very brief case. After verdict, it moved for judgment, which was denied. Technically, the motion at the close of the plaintiffs case did not survive because not followed up by a motion for a directed verdict at the close of all the evidence, see Martin v. Hall, 369 Mass. 882, 884 (1976), and the later motion for judgment was out of order for the same reason, see Mass.R.Civ.P. 50(b) . . . ; but as the case the defendant put in was inconsequential, and the judge received and ruled on the later motion, we are content to review the point of law sought to be raised . . .

The party consisted of Devos and at least two other employees of Central Beef as well as the clients, who were four in number.

Apparently the telephone number Harris had left with Devos was his mother’s number. On one or more of the calls that Devos or his associate, one Tejeda, made to the number looking for Harris, Devos or Tejeda was very rude to her. Harris testified that his mother had told him of the calls when he called her around 11:00 p.m.

Devos was charged with assault and battery by means of a dangerous weapon — the shoe — and convicted of the crime. The parties in this case stipulated at the outset of the trial to these criminal consequences of the August 18 incident, so that liability on the part of Devos was essentially a foregone conclusion. See, e.g., Aetna Cas. Ins. Co. v. Niziolek, 395 Mass. 737, 742 (1985).