White, Catherine A., J.
This case arises from defendant John Hagen’s (“Hagen”) notification to the Orleans Police (“Police”) that he suspected that the plaintiff, Ronald Wilkerson (“Wilkerson”) attempted to cash a stolen check at Shaw’s Market (“Shaw’s”).[3] On the date of the incident, Hagen worked for Shaw’s. Hagen stated to police that he knew Wilkerson from the Barnstable House of Correction (“HOC”). The record shows some evidence that Hagen made these statements because Wilkerson is African-American. The check that Wilkerson attempted to cash was a bona fide payroll check issued by his employer. Alleging state civil rights violations, discrimination, defamation, and both negligent and intentional infliction of emotional distress, Wilkerson filed suit against Shaw’s and Hagen. Shaw’s now moves for summary judgment urging that Hagen was not operating within the scope of his employment when he contacted the Police, and, therefore, they are not vicariously liable for his acts. For the reasons set forth below, Shaw’s Motion for Summary Judgment is ALLOWED.

BACKGROUND

Considered in the light most favorable to the plaintiff, the non-moving party, the facts and reasonable inferences drawn from them follow. Mass.R.Civ.P. 56(c). Shaw’s employed Hagen, who is Caucasian, as a “bagger” at one of its stores in Orleans, Massachusetts starting in September 2000. Under Shaw’s job descriptions, a bagger has three primary duties: 1) to place items into bags and then place those bags in grocery carts; 2) to retrieve groceiy carts from the parking lot and transport them back to the store; and 3) to accept bottle returns from customers. A bagger’s secondary duties could include re-shelving stock, spot cleaning and mopping, performing cashiering duties, and stocking grocery bags. Hagen never performed any cashiering duties. The record does not show that Hagen had any employment responsibility to make determinations regarding the cashing of customer’s checks. Shaw’s provided training to its employees which required an employee to notify a manager when and if they saw “unusual customer activity.” In addition, company policy prohibited unlawful discrimination or harassment by employees.
On November 16, 2001, Wilkerson, who is black, entered Shaw’s early in the morning to cash a check. Wilkerson spoke with Kathleen Farina (“Farina”) at the service counter. Farina told Wilkerson she could cash the check only if he possessed a check-cashing card or “Star’s Rewards Card” (“Rewards Card”) and if his employer was listed in Shaw’s computer system. Wilkerson did not have a Rewards Card and his employer, Midas Muffler (“Midas”), was not listed in Shaw’s computer system. Farina gave Wilkerson a form for Midas to complete, indicating that if Midas did so, he would be able to cash his payroll check there in the succeeding weeks. Wilkerson accepted the application form and left the premises but without cashing his check.
Hagen knew Wilkerson because they each served time in the HOC in June 1999 where they were housed in the same cell section. Almost immediately after Wilkerson left Shaw’s, Hagen approached Farina at the service counter. Hagen informed Farina that Wilkerson was “bad news” and that he, Hagen, intended to call the police because the check was stolen. Farina told Hagen that Wilkerson had done nothing wrong and she refused to call the police. Another cashier, Janet Cummings, told Hagen not to call the police. Hagen thought he was trying to protect the interest of Shaw’s but he also knew that contacting the police to report his suspicions was not part of his job because he had been told during orientation to inform management of issues of unusual customer activity.
Nevertheless, Hagen left the store, went outside to a nearby pay phone, and contacted the Police. An *245 Orleans police officer, Officer Smith (“Smith”), investigated Hagen’s complaint. Smith interviewed Farina who provided Wilkerson’s name, address, check amount, and Midas’ name. Farina also explained to Smith that she did not cash the check because Midas’ name was not in Shaw’s system.
Smith then proceeded to Midas where he found and interviewed Wilkerson. Wilkerson explained that he had tried to cash a payroll check and that he had worked at Midas for the previous three years. Smith completed a report incident to his investigation. In that report Smith opined that Hagen had come to the conclusion that Wilkerson’s check was stolen because Hagen had known Wilkerson from the time they spent at the HOC, and “by [Hagen’s] own admission, Mr. Wilkerson’s skin color.”
Shaw’s store manager, Lorraine Sanees (“Sanees”) immediately disciplined Hagen for his conduct towards Wilkerson, giving him a written warning, and suspending him for four days. Sanees noted that Hagen’s actions in notifying the Police of his suspicions did not fall within the scope of his employment authority as a bagger at Shaw’s.

DISCUSSION

Summary judgment is appropriate when the moving party shows from the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983). When, evaluating a summary judgment motion, the court looks at the evidence in the light most favorable to the non-moving party. O’Sullivan v. Shaw, 431 Mass. 201, 203 (2000). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submission of an affirmative defense negating an essential element of the claimant’s case or by demonstration of the unlikelihood of proof of that element of a claim at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
A plaintiff may state a cause of action under the Massachusetts Civil Rights Act (“MCRA”) against a private employer based on respondeat superior. Pheasant Ridge Assoc. Ltd. Partnership v. Burlington Town, 399 Mass. 771 (1987). An employer will be found to be vicariously liable under the MCRA for civil rights violations committed by its employee acting within the scope of his employment. Sarvis v. Boston Safe Dep. & Trust Co., 47 Mass.App.Ct. 86, 97 (1999). The essence of Shaw’s summary judgment motion is that Hagen’s conduct did not fall within the scope of his employment.
In determining the scope of employment, the fact finder must consider whether the conduct complained of is of the kind the employee was hired to perform, whether it occurs within authorized time and space limits, and whether it was motivated, at least in part, by a purpose to serve the master. Wang Labs., Inc. v. Business Incentives, Inc., 398 Mass. 854, 859 (1986). An employee’s belief that he is acting in the best interest of his employer and furthering his employer’s work is insufficient to establish liability. Miller v. Federated Dept. Stores, 364 Mass. 340, 350 (1973).
The evidence in the summary judgment record warrants the conclusion that Hagen was not acting within the scope of his employment when he contacted the Police. Foremost, the record reveals that processing checks for payment was not within Hagen’s scope of employment. Neither the primary nor secondary duties of the bagger’s job description include making check-cashing determinations. The record also shows that Farina, whose responsibility that day was to cash checks at customer service following a standard protocol, did not consider Wilkerson’s attempt to cash a check anything wrong or unusual. In addition, Shaw’s instructed and required employees to inform management of unusual customer activity. Hagen’s course of action under Shaw’s policy was to inform Shaw’s management of his suspicions, if, in fact, he believed his suspicions warranted a conclusion that Wilkerson’s attempt to cash a check was “unusual.” This he did not do. Rather, he departed from the course of action he was specifically trained to follow. Moreover, when he reported his suspicions to Farina and another cashier, neither of those employees independently reported Hagen’s concern to management nor does the record show that they encouraged or aided Hagen to do so. Thus, reporting suspicions of unusual customer activity directly to police was not the kind of work Hagen was hired to perform.
Second, Hagen was on the job the morning of November 16, 2001, working as a bagger at Shaw’s. He did not, however, use a Shaw’s telephone to contact Police, instead, stepping outside the store to use a pay phone. Thus, while he might have been acting on company time, his contact with the police was not within company “space.”
Third, Hagen’s own testimony was that he thought he was benefitting Shaws’s, satisfies the prong of “being motivated to serve the master.” That motivation alone is insufficient to establish Shaw’s liability because under the standard articulated in Wang Labs, all three prongs must be satisfied to establish that the actor’s conduct fell within the scope of his employment. Wilkerson provides no countervailing evidence to support a different conclusion regarding Hagen’s scope of employment.
Finally, the court notes that Wilkerson’s claim is based on civil rights violations. As mentioned above, the record reveals some evidence that Hagen’s state *246 ment to Police was based on Wilkerson’s “skin color,” particularly Smith’s opinion in his police report that Hagen’s own admission as to Wilkerson’s race was the basis for Hagen’s conclusion that Wilkerson’s check was stolen. The court draws no conclusion about what motivated Hagen or whether the opinion of Smith is admissible in Shaw’s motion for summary judgment. Shaw’s store policy clearly prohibited unlawful discrimination and harassment by employees. But, as just discussed, Hagen’s statement to Police regarding a purported stolen check was not within the scope of Hagen’s employment. Thus, Shaw’s prohibition of unlawful discrimination needs no further inquiry. Accordingly, Shaw’s motion for summary judgment is ALLOWED.

ORDER

For the foregoing reasons, it is hereby ORDERED that defendant Shaw’s Supermarket, Inc.’s motion for summary judgment is ALLOWED.

 The civil action cover sheet, the court docket and the complaint identify the defendant as “Star Market Co, Inc. d/b/a Star Market.” The captions in subsequent court documents alternately identify the defendant as “Shaw’s Supermarket Inc. d/b/a Shaw’s Market” and “Shaw’s Supermarket, d/b/a Star. Market,” the latter being the title provided by the defendant who should know its own name. Accordingly, the corporate defendant in this case is identified as “Shaw’s.”