Nicholas NASUTI, Plaintiff, Appellee,

v.

James SCANNELL,
Defendant, Appellant.

Nicholas NASUTI, Plaintiff, Appellee,

v.

James SCANNELL,
Defendant, Appellee.

United States of America,
Defendant, Appellant.

In re UNITED STATES of America
and James Scannell, Petitioners.

Nos. 89–1830, 89–1831 and 89–2001.

United States Court of Appeals,
First Circuit.

Heard Feb. 5, 1990.
Decided June 29, 1990.

Ira C. Lupu, Appellate Staff, Civil Div., Dept. of Justice, with whom Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D.C., Wayne A. Budd, U.S. Atty., Boston, Mass., and Barbara L. Herwig, Washington, D.C., Appellate Staff, Civil Div., Dept. of Justice, were on Petition for Writ of Mandamus and brief, for defendants.

Karen B. Hoffman with whom Burton A. Nadler and Petrucelly & Nadler, P.C., Boston, Mass., were on brief, for appellee.

Before CAMPBELL, Chief Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

This case comes before us for the second time. Its first visitation was in *Nasuti v. Scannell*, 792 F.2d 264 (1st Cir.1986) ("Nasuti I"). The present time around, the basic issues remain much the same—the reviewability and correctness of the district court's order remanding back to the state court plaintiff Nasuti's claim for assault and battery against defendant Scannell. However, because of Congress's recent adoption of the Westfall Act, our answer is now different. While in *Nasuti I*, we dismissed for lack of appellate jurisdiction, in *Nasuti II* we conclude that we may review the remand order by way of mandamus. So doing, we hold that, as defendant was a federal employee currently certified by the Attorney General of the United States to have been acting within the scope of his federal employment when plaintiff was injured, the action may not be remanded from the federal to the state court unless and until the district court expressly finds that, contrary to the certification, the defendant was acting outside the scope of his federal employment. Accordingly we direct the district court to vacate its order of remand to the state court and to make a determination as to whether Scannell was acting within the scope of his employment when, allegedly, he injured Nasuti.

## I. THE WESTFALL ACT

The Westfall Act amended key provisions of the Federal Torts Claims Act applicable to actions against federal employees. Properly known as the Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub.L. 100–694, 102 Stat. 4563, the statute was Congress's response to the Supreme Court's decision in *Westfall v.*

*Erwin,* 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988). In *Westfall,* the Supreme Court reduced the immunity previously available to federal employees for common law torts committed within the scope of their employment. *Compare, e.g., Barr v. Matteo,* 360 U.S. 564, 574–75, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959) (plurality opinion). The Court in *Westfall,* however, invited Congress to deal with the immunity issue, saying,

> Congress is in the best position to provide guidance for the complex and often highly empirical inquiry into whether absolute immunity [for federal employees] is warranted in a particular context.

484 U.S. at 300, 108 S.Ct. at 585. Congress quickly accepted the invitation, enacting the Westfall Act within the year. In findings set out at the beginning of the Act, Congress denounced judicial "erosion of immunity of Federal employees from common law tort liability," saying that that erosion "has created an immediate crisis involving the prospect of personal liability and the threat of protracted personal tort litigation for the entire Federal workforce." Pub.L. No. 100–694, § 2(a)(5), eff. Nov. 18, 1988. The new Act's purpose was described as being,

> to protect Federal employees from personal liability for common law torts committed within the scope of their employment, while providing persons injured by the common law torts of Federal employees with an appropriate remedy against the United States.

Pub.L. No. 100–694, § 2(b). The Westfall Act thus expressly provided for the absolute immunity of government employees for acts committed within the scope of their employment that amounted to common law torts.

The heart of the scheme created by the Westfall Act lies in sections 5 and 6, which amend the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.* Section 5 provides that the FTCA's remedy against the United States for the negligent or wrongful acts or omissions of any government employee while acting within the scope of his office or employment "is exclusive of any other civil action or proceeding for money damages ... against the employee whose act or omission gave rise to the claim...." 28 U.S.C. § 2679(b)(1). According to the House Report on the Westfall Act, "the availability of suit under the FTCA precludes any other civil action or proceeding of any kind from being brought against an individual Federal employee or his estate if such action or proceeding would sound in common law tort." H.R.Rep. No. 100–700, 100th Congr., 2d Sess. 5 ("House Report"), *reprinted in* 1988 U.S.Code Cong. & Admin.News ("USCCAN") 5945, 5949. By rendering federal employees immune from personal liability for actions within the scope of their employment, Congress would "return [them] to the status they held prior to the *Westfall* decision." *Id.* at 4, 1988 USCCAN at 5947.

Section 6 implements section 5's exclusive-remedy provision. It directs the Attorney General to defend any civil action or proceeding brought in any court against an employee of the government for damage or injury. 28 U.S.C. § 2679(c). It authorizes the Attorney General to issue what has come to be called a "scope certification"—a certification that "the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose...." 28 U.S.C. § 2679(d)(1)–(2).[1] Upon such certification, any civil action brought in a state court is removed to the federal district court, where it "shall be deemed to be an action or proceeding brought against the United States under the provisions of this title [i.e., the FTCA]...." *Id.* § 2679(d)(2). The Attorney General's certification "shall conclusively establish scope of office or employment for purposes of removal." *Id.*

---

1. The Attorney General has delegated this authority by regulation to United States Attorneys, who make scope certification determinations in consultation with the Department of Justice. *See* 28 C.F.R. § 15.3 (1989). The Attorney General's delegation authority is set forth in 28 U.S.C. § 510.

## II. FACTS AND PROCEDURAL BACKGROUND

When the incident that gave rise to this litigation occurred, plaintiff Nicholas Nasuti and defendant James Scannell were both employees of the National Park Service. Nasuti was a janitor and Scannell was a driver. In August of 1980, Nasuti sustained back injuries while riding in the back of a pickup truck being driven by Scannell on a Park Service assignment.

In August 1983, Nasuti brought an action for negligence against Scannell in the Massachusetts Superior Court. The action was, at the time, subject to the provisions of the Federal Driver's Act, the predecessor of the Westfall Act which contained some but not all of the latter's features. Pursuant to a provision of the Driver's Act, then 28 U.S.C. § 2679(d), the Attorney General certified that Scannell had been acting within the scope of his employment as a federal driver when Nasuti was injured. The case was removed to the United States District Court for the District of Massachusetts in accordance with the same provision of the Driver's Act. The United States then moved to dismiss Nasuti's action on the ground that, being a federal employee, he was limited in remedies against the United States to those provided by the Federal Employees' Compensation Act ("FECA"), see 5 U.S.C. § 8116(c) (1982).[2]

On the basis of the FECA, the district court dismissed the original negligence claim. However, Nasuti had amended his complaint to allege, as an additional claim, that Scannell's conduct in driving the pickup amounted to an assault and battery upon him. The district court ordered this amended complaint to be remanded to the state court.

On motion by the United States, the district court stayed execution of its remand order, and referred to a magistrate the issue of whether Scannell had been acting within the scope of his employment. The magistrate found that: (1) if the plaintiff's version of the events leading to his injuries were believed, there was sufficient evidence for a jury to find that Scannell had acted intentionally in driving the Park Service vehicle in a manner which amounted to the commission of an assault and battery on Nasuti, and (2) on this evidence, under Massachusetts law, these intentional acts would necessarily fall outside the scope of Scannell's employment.[3] The magistrate ruled that, although normally the district court must rule on the question of whether the defendant was acting within the scope of his employment, he could not rule on the question in the instant case without also deciding the merits of Nasuti's case, i.e., whether Scannell had committed an assault and battery in performing the acts that injured Nasuti. Instead, he recommended remand of the case to the Massachusetts state court for a decision on the merits,

**2.** The Federal Employees' Compensation Act sets up a scheme under which an injured federal employee receives worker's compensation for injuries sustained in the performance of duty. The statute provides that such compensation "is exclusive and instead of all other liability of the United States" to the employee, including liability under the FTCA.

**3.** The issue of whether an employee is acting within the scope of his employment for purposes of the FTCA is governed by the law of respondeat superior of the state in which the negligent or wrongful conduct occurred. *Williams v. United States,* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955); *White v. Hardy,* 678 F.2d 485 (4th Cir.1982).

Under Massachusetts law, an employer is liable for the intentional tort of his employee only if "the assault was committed as a result of the plaintiff's conduct which *at the time of the assault* was affecting the employee's ability to satisfactorily do his job." *Miller v. Federated Department Stores, Inc.,* 364 Mass. 340, 348, 304 N.E.2d 573, 579 (1973). "What must be shown is that the employee's assault was in response to the plaintiff's conduct which was presently interfering with the employee's ability to perform his duties successfully." *Id.* 364 Mass. at 350, 304 N.E.2d at 580. *See also Manning v. Grimsley,* 643 F.2d 20, 24–25 (1st Cir.1981); *Commonwealth v. Jerez,* 390 Mass. 456, 462, 457 N.E.2d 1105, 1108–09 (1983).

The magistrate found no evidence that the defendant drove the truck in the manner alleged in response to any activity by the plaintiff which was interfering with the defendant's ability to carry out his job. It followed that *if* Scannell had committed an assault and battery, it was outside the scope of his employment for FTCA purposes.

pursuant to the preamendment 28 U.S.C. § 2679(d):

> Should a United States district court determine ... before a trial on the merits that the case ... is one in which a remedy by suit [under the FTCA] is not available against the United States, the case shall be remanded to the State court.

No remedy against the United States was available, the magistrate ruled, because of the statutory provision exempting assaults, batteries and certain other intentional torts from the FTCA. 28 U.S.C. § 2680(h).[4] Consequently, there was no need to decide whether Scannell had actually committed an assault and battery since, even if he had, Nasuti could not recover against the United States under the FTCA.

On August 20, 1985, the district judge adopted the magistrate's report and recommendations and ordered the case to be re-

4. The language of this provision is as follows: The provisions of this chapter [in which 28 U.S.C. § 2672 is also found] and section 1346(b) of this title shall not apply to

. . . . .

(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights....
28 U.S.C. § 2680.

5. The provisions of 28 U.S.C. § 1447 (1982) control various categories of cases removed from state courts to federal district courts. Section 1447(d) provides that district court orders remanding a case to the state court from which it is removed are not reviewable:

(a) In any case removed from a State court, the district court may issue all necessary orders and process to bring before it all proper parties whether served by process issued by the State court or otherwise.

. . . . .

(c) If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case....

(d) An order remanding a case to the State court from which it was removed is not reviewable by appeal or otherwise....

In *Nasuti I*, in response to arguments that § 1447(d) did not apply to remand orders under the Federal Driver's Act, we noted that:

"Section 1447 refers to *"any* case removed from a State court" (emphasis added), and does not by its terms limit itself to cases removed under provisions currently codified in the general removal statute, 28 U.S.C.

manded back to the Massachusetts Superior Court from whence the original negligence complaint had been removed.

Scannell, represented by the United States Attorney, appealed to this court from the order of remand, by both direct appeal and a petition for writ of mandamus. We held in *Nasuti I* that 28 U.S.C. § 1447(d)[5] barred the appeal; and thus we did not reach the merits of the remand order. 792 F.2d at 266–69. We noted that remand orders are reviewable only where there are clear indications that Congress so intended or where the order falls under the special exceptions to § 1447(d) established by Supreme Court decision;[6] and finding neither condition met here, we dismissed the appeal and denied the petition for mandamus.[7]

In November 1988, the Westfall Act went into effect. The new Act then be-

§§ 1441–1452 (1982). The section has historically been construed broadly as applying to all cases removed from the state courts."
*Nasuti v. Scannell*, 792 F.2d at 267.

We referred to *United States v. Rice*, 327 U.S. 742, 66 S.Ct. 835, 90 L.Ed. 982 (1946), in which the Supreme Court had stated that the general removal statute "'explicitly withdrew the right of appeal and writ of error ... in *all cases* removed from state courts under *any statute* authorizing removal.' *Id.* at 751, 66 S.Ct. at 839 (emphasis added)." *Nasuti v. Scannell*, 792 F.2d at 268.

6. In *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 346, 96 S.Ct. 584, 590, 46 L.Ed.2d 542 (1976), the Supreme Court indicated that remand orders are reviewable in certain instances: the bar on review in § 1447(d) applies only to remand orders "issued under § 1447(c) and invoking the grounds specified therein— that removal was improvident and without jurisdiction[.]"

7. In connection with the preceding discussion, it should be noted that 28 U.S.C. § 1447(c) was amended effective November 19, 1988 to provide for remand not when removal had been "improvident and without jurisdiction" but rather when it appeared that the district court was without subject matter jurisdiction. ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.") The new version of the provision was in effect at the time of the district court's second remand order, *infra;* but for the purposes of our discussion, the new statutory language does not represent a substantive change.

came the occasion for additional proceedings in this case, including the present appeal. Section 8(b) of the Act provided that it would apply "to all claims, civil actions, and proceedings pending on ... the date of the enactment of this Act," Pub.L. No. 100–694, § 8(b), 102 Stat. 4563, 4565–66 (1988); and thus it applied to the instant case, which was by then pending in the Massachusetts state court. Pursuant to the new act, the United States Attorney for the District of Massachusetts once again certified that Scannell had been acting within the scope of his employment in the events underlying Nasuti's action and filed a notice of removal and a motion to substitute the United States as the sole defendant. Nasuti thereupon filed a motion to remand, which the district court granted on the basis that 28 U.S.C. § 2680(h), which exempts enumerated intentional torts including assaults and batteries from the coverage of the FTCA,[8] deprives the district court of subject matter jurisdiction to hear the assault and battery claim.[9] Failure to remand the case to the state court, the district court held, would deprive plaintiff of any remedy at all for the intentional tort—a result certainly not intended by Congress, since the legislative history specifically states that federal employees can still be held personally liable for egregious misconduct.[10] Here, the court held, Nasuti is making a claim for assault and battery, and only the state court has jurisdiction to hear it.

Scannell, represented by attorneys for the United States, has filed both an appeal from the district court's allowance of the remand motion and a petition for a writ of mandamus which would enforce an alleged statutory duty on the part of the district court to exercise jurisdiction in this case.

The United States has joined in this appeal and petition.

## III. CONTENTIONS

The United States argues that the district court's remand order is an appealable final order because it effectively dismisses the United States as a defendant from the case, and does so in violation of 28 U.S.C. § 2679(d)(2), which makes the Attorney General's scope certification conclusive. In such circumstances, the government says, section 1447(d)'s limitation on appellate review of remand orders does not apply. The United States also argues that once removed to the federal court pursuant to 28 U.S.C. § 2679(d)(2),[11] an action cannot be remanded back to the state court so long as the Attorney General's valid scope certification remains outstanding since, under the last sentence of the same section, the Attorney General's certification "shall conclusively establish scope of office or employment for purposes of removal." In the government's view, the Attorney General's scope certificate conferred jurisdiction upon the district court which the court could not override, at least without any finding of its own that defendant Scannell had acted beyond the scope of his employment.

Plaintiff Nasuti responds that the Westfall Act does not in any way deprive the district court of authority to remand this action for an intentional common law tort to the state court. He believes the district court *must* remand the case because there is nothing left for it to decide: no one disputes that the original negligence claim brought by Nasuti under the FTCA was properly dismissed, since Nasuti, as a fed-

---

**8.** See note 4, *supra.*

**9.** See note 7, *supra.*

**10.** [The Westfall Act] provides that the United States will incur vicarious liability only for the common law torts of its employees which are committed within the "scope of their employment." If an employee is accused of egregious misconduct, rather than mere negligence or poor judgment, then the United States may not be substituted as the defen-

dant, and the individual employee remains liable.
House Report at 5, 1988 USCCAN at 5949.

**11.** The statute provides that "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose," the suit "shall be removed ... at any time before trial" to federal court.
28 U.S.C. § 2679(d)(2).

eral employee, was limited to a compensation remedy under FECA. Further, the assault and battery claim is beyond the FTCA jurisdiction of the federal court. Moreover, asserts Nasuti, the remand order is not presently subject to our review by mandamus or appeal, as it is not a final decision. The ban in 28 U.S.C. § 1447(d) against appellate review of remand orders is clearly applicable.[12]

## IV. SYNOPSIS

The foregoing are complex issues. Nonetheless, while the statute is terse, we find answers in both its stated purpose and its provisions. Before discussing our conclusions in detail, it may be helpful if we now summarize them briefly as follows:

The Westfall Act's introductory findings, as well as its history, make clear that Congress's chief aim was to restore and protect federal employees' immunity. In light of this declared purpose, as well as of the specific deletion of the remand provision found in the old Driver's Act and of the Westfall Act's new provision making the Attorney General's scope certification conclusive, we hold that the instant remand order is reviewable by mandamus, since issuance of a remand order at this point in the proceedings was entirely outside the district court's statutory authority.

On the merits, the remand order fails for the same reasons that cause it to exceed the district court's authority. Where there is an outstanding scope certification, an order remanding to the state court is illegal unless the court has made an express determination of its own that defendant, when he allegedly injured plaintiff, was acting beyond the scope of his federal employment. The district court could not surrender this case to a state court without itself first resolving the scope of employment issue, since if Nasuti's injury were due to no more than Scannell's negligence (or to an assault aimed at allowing Scannell to do his job satisfactorily, see note 3, *supra*), Scannell would have been acting within the scope of his employment and would be entitled, under the federal stat-

ute, to absolute immunity from suit in any forum. Furthermore, given the removal and certification provisions of the Westfall Act, the district court was the exclusive forum to determine the scope of employment issue. The district court could not pass on to a state court the responsibility for deciding the district court's own jurisdiction or whether or not Scannell had federal immunity.

The district court's remand order is thus beyond its authority and must be vacated. A remaining question is whether the Attorney General's scope certification precludes further consideration of the scope of employment question, or whether that question should be remanded for district court resolution. We hold the latter. While Congress provided that the Attorney General's certification conclusively establishes scope of employment for *removal* purposes, we do not construe this as abolishing the district court's normal power to determine the scope question finally where necessary to resolve disputed rights and the court's own subject-matter jurisdiction.

For these reasons we direct the district court to vacate its order of remand to the state court and to determine whether or not Nasuti's injury was, at most, a common law tort caused by Scannell while acting within the scope of his office or employment. If so, Nasuti's assault claim must be dismissed, as he is barred from proceeding against Scannell in any court, federal or state, on account of the injury in question, Scannell being immune from being sued for such conduct. If not, Nasuti may pursue his claim against Scannell, personally, in the state court.

We shall now discuss our reasons for the above conclusions in greater detail.

## V. COURT OF APPEALS JURISDICTION TO REVIEW REMAND ORDER

■ We consider in this section the difficult question of our jurisdiction to review the remand order. In *Nasuti I*, we held that this court lacked appellate jurisdiction,

---

**12.** See *supra* note 5.

and even mandamus jurisdiction, over the district court's order of remand. 792 F.2d 266–269. Relying on *United States v. Rice*, 327 U.S. 742, 66 S.Ct. 835, 90 L.Ed. 982 (1946), we applied the bar to appellate review of remand orders that is located in paragraph (d) of the general removal statute, 28 U.S.C. § 1447. *Id.* We did not exercise mandamus jurisdiction under *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), as we believed that remand had been sufficiently based on factors set out in section 1447(c), i.e., "that the case was removed improvidently and without jurisdiction." 792 F.2d at 269.

The Westfall Act has altered that analysis. To explain why, we must look to the aims and workings of that statute. In statements made at the beginning of the Westfall Act, Congress decried the "erosion of immunity of Federal employees from common law tort liability," and stated that it wished "to protect Federal employees from personal liability for common law torts committed within the scope of their employment." Pub.L. No. 100–694, § 2(b). To protect employee immunity, Congress not only broadened the old Driver's Act provision for removal to a federal court upon scope certification of the Attorney General, but provided that certification "shall *conclusively* establish scope of office or employment for purposes of removal." 28 U.S.C. § 2679(d)(2) (emphasis supplied). Moreover, Congress also eliminated the Driver's Act provision that a case which is removed to federal court "shall be remanded to state court" upon a determination by the federal district court before trial on the merits "that the case ... is one in which a remedy by suit [under the FTCA] is not available against the United States." 28 U.S.C. § 2679(d), pre-amendment version. The confluence of the conclusive scope certification with the elimination of the remand provision has, in our view, divested the district court of such *ordinary* remand authority as it formerly possessed.

These statutory alterations do more than indicate Congress's intention to trade off a claim against the individual employee for a claim against the United States under the FTCA. They establish Congress's intention to protect in federal court, as a distinct interest, the immunity of any federal employee whom the Attorney General certifies to have been acting within the scope of his or her office or employment. In cases like the present, the injured plaintiff lacks an FTCA remedy: being a federal employee, plaintiff here was limited to a workman's compensation remedy under FECA in lieu of an FTCA remedy. *See* note 2, *supra.* Nonetheless, the new statute, unlike the old Driver's Act, does not direct a remand to state court upon the court's determination that an FTCA remedy is not available against the United States. Nothing in the current law suggests that Congress meant Scannell to lose his personal immunity from suit—provided he had been acting within the scope of his employment—simply because plaintiff Nasuti could not recover against the United States under the FTCA. Rather, the statute now specifies that the scope certification of the Attorney General compels removal of any action begun in a state court to federal court, where it shall be deemed a proceeding against the United States, and that such certification "*shall conclusively establish scope of office or employment for purposes of removal.*" 28 U.S.C. § 2679(d)(2) (emphasis supplied). It follows that so long as the Attorney General's certificate is validly in effect, Scannell must be deemed conclusively, for removal purposes, to have been acting within the scope of his employment, *and is thus absolutely immune from any civil action or proceeding for money damages.*[13] The dis-

---

13. 28 U.S.C. § 2679(b)(1) provides as follows: (b)(1) The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money

trict court's current order remanding to the state court is, therefore, totally unauthorized, being contrary to Congress's mandate that the Attorney General's scope certification be conclusive.[14]

This is not to say, as we later explain in part VII, *infra*, that the Attorney General's scope of employment certification must not give way to a later, contrary, judicial finding on the scope question. If contested issues arise over whether or not the employee was acting within the scope of his employment, the district court possesses power under Article III of the Constitution to resolve the dispute; the issue, after all, goes to the court's own subject-matter jurisdiction. *Infra*. Absent, however, a contrary federal judicial determination of the scope question, the Attorney General's certification is binding on all, including the court itself.

The court's ultimate authority to rule finally on scope does not, of course, validate the current remand order. Issued while the Attorney General's scope certification remained in full force, the remand order was not supported by a superseding judicial determination that Scannell had, in fact, been acting beyond the scope of his employment when Nasuti was injured. Instead, the district court *declined* to determine whether Scannell had been acting within or without the scope of employment. The court apparently believed that since neither FTCA relief nor relief on the assault and battery claim were possible in a federal court, a ruling as to scope was unnecessary and was also undesirable, as such a ruling was inextricably bound up with, and would prejudge, the merits of plaintiff's state assault and battery claim. But since the Attorney General had "conclusively" certified that Scannell had acted within the scope of his employment, Scannell was immune from suit until and unless the scope issue was judicially resolved against him in federal court. The district court was not authorized to remand to a state court without itself having first decided the issue upon which the correctness of the Attorney General's scope certification and Scannell's federal immunity turns. While such a decision might be coextensive with the merits of the mooted negligence claim as well as of the asserted state assault and battery claim, Scannell has an absolute right to personal immunity from suit until and unless the federal district court determines that he was acting outside the scope of his employment when Nasuti was injured. To treat the present remand order as within the court's authori-

damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

**14.** *Accord, Mitchell v. Carlson,* 896 F.2d 128 (5th Cir.1990) and *Aviles v. Lutz,* 887 F.2d 1046 (10th Cir.1989). *Compare Smith v. Marshall,* 885 F.2d 650 (9th Cir.1989), *cert. granted,* —— U.S. ——, 110 S.Ct. 2617, 110 L.Ed.2d 638 (1990). *See also Newman v. Soballe,* 871 F.2d 969 (11th Cir.1989). Insofar as the two latter cases may suggest that the § 2680(h) exemption allows Nasuti—notwithstanding the outstanding scope certification—to sue Scannell personally for assault and battery, we disagree. As Judge Baldock points out in *Aviles,* express language in the House Report fortifies the conclusion that tort claims which cannot be pursued against the United States under the FTCA, because of the exemptions in § 2680 or elsewhere, may not be pursued against the individual employee *so long as the employee acted in the scope of employment.* 887 F.2d at 1049, citing *inter alia* H.R. Rep. No. 100–700, 100th Cong., 2d Sess. 6, *reprinted in* 1988 U.S.Code Cong. & Admin.News

5945, 5950. So long as the Attorney General's scope certification is outstanding (and has not been expressly reversed after judicial review of the scope question, *infra* ), it must be presumed that—contrary to Nasuti's claim—Scannell was acting at all relevant times within the scope of his employment. It is immaterial that Nasuti was barred from FTCA recovery by FECA, *see* note 2, *supra,* and also immaterial (so long as the scope certification stands) that Nasuti now asserts a claim—assault and battery—inconsistent with the Attorney General's position that Scannell was acting within the scope of his federal employment. Only a specific federal judicial determination that Scannell was *not* within the scope of employment can alter the present posture of events immunizing Scannell from personal suit.

We thus agree with the Fifth and Tenth Circuits that the Attorney's General's scope certification must be given conclusive effect at this juncture. We disagree with their holdings in *Mitchell* and *Aviles* only to the extent they may imply that the scope question will not be judicially determinable should it be raised by the plaintiff. *See* part VII, *infra*.

ty would be to ignore Congress's strongly expressed intent to safeguard federal employee immunity. It would flatly contravene the "conclusive" effect Congress has granted to the Attorney General's certification. And it would relegate Scannell to a state tribunal where, under the present statutory scheme, his federal immunity would be difficult if not impossible to define, determine, and protect.

We have pursued the above discussion—most of which also goes to the merits of the remand order—because it is necessary to explain why the remand order is now open to our examination by mandamus notwithstanding our earlier, different determination in *Nasuti I* under the Driver's Act provisions. While the Westfall Act contemplates—and upon certification requires—removal, its elimination of the Driver's Act proviso for remand where FTCA relief is foreclosed, and its new provision for a "conclusive" Attorney General's certification, remove all authority for a remand without either a withdrawal of the certification or a specific judicial finding that defendant was acting beyond the scope of his employment. A remand without those pre-conditions undermines the very interest the Westfall Act was intended to protect—the federal employee's immunity from suit for actions taken in the scope of employment.

In such extreme circumstances, we believe the doctrine of non-reviewability of remand orders, which the Court enunciated most strongly in *United States v. Rice*, 327 U.S. 742, 66 S.Ct. 835, 90 L.Ed. 982 (1946), gives way to the exception later carved out in *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976). This is not a situation where allowing mandamus review of the remand order threatens the "policy of avoiding further interruption of the litigation of removed causes, properly begun in state courts...." *Thermtron Products* (Rehnquist, J. dissenting), 423 U.S. at 361, 96 S.Ct. at 597. Whatever its policy in most other contexts, the aim of Congress in the Westfall Act was to establish and protect a federal employee's immunity by assuring removal to, and retention by, a federal court of all actions commenced against the employee where scope of employment has been certified. Congress has stated that, for removal purposes, the scope certification is conclusive. While, to be sure, the district court based its remand order on a supposed lack of jurisdiction, Congress's only specified criterion for removal and for federal jurisdiction—the Attorney General's scope certification—was at all relevant times in full force and effect. As the court said in *Thermtron*,

> ... [T]his Court has not yet construed the present or past prohibition against review of remand orders so as to extinguish the power of an appellate court to correct a district court that has not merely erred in applying the requisite provision for remand but has remanded a case on grounds not specified in the statute and not touching the propriety of the removal.

423 U.S. at 352, 96 S.Ct. at 593. While *Thermtron*'s facts were different, the underlying concept—reviewability by mandamus of a remand lacking any basis in the governing statute—applies. We believe that the district court's remand order was a departure so lacking in statutory basis, and so clearly contrary to Congressional policy as expressed in the Westfall Act, as to require our review by mandamus.[15]

---

**15.** This particular case would also seem to be one of the very rare occasions that would justify review by "advisory" or "supervisory" mandamus, given the novelty and importance of the questions raised. Unless we review what was done below, litigating parties and district courts in this Circuit will be left entirely to their own devices in determining how the new statute in issue works—and, as cases from around the nation demonstrate, there seems to be an infinite variety of views on the subject. Doubtless, the Supreme Court must eventually settle some of these questions, but in the meantime circuit appellate scrutiny is called for. In this Circuit, we have recognized advisory mandamus as an available, if rare, corrective and didactic device to resolve novel and important issues of law that otherwise would elude effective review. *In re Recticel Foam Corp.*, 859 F.2d 1000, 1005 n. 4 (1st Cir.1988). *See also*, e.g., *In re Justices of Supreme Court of Puerto Rico*, 695 F.2d 17, 25 (1st Cir.1982). 16 C. Wright & K. Graham, *Federal Practice and Procedure* § 3934 (Supervisory and Advisory Mandamus) (1977).

## VI. MERITS OF REMAND ORDER

■ What we have said in connection with our jurisdiction, and the relevant interpretation of the Westfall Act, leaves little more to be said concerning the actual merits of the remand order. While the magistrate found that, taking plaintiff's case in plaintiff's favor, a possible claim existed for assault and battery, and hence for conduct by Scannell beyond the scope of his employment, the merits of that position were never judicially resolved. Hence it remains uncertain whether Nasuti is entitled to proceed against Scannell in any forum. If Scannell was blameless or merely negligent, and was acting within the scope of his authority—or if he acted intentionally but only in response to plaintiff's interference with his ability to do his job, see note 3, supra—he may not be sued personally in state court or anywhere else. 28 U.S.C. § 2679(b)(1). The scope issue is determinative both of Scannell's federal immunity and of the jurisdiction of the federal district court. It cannot be passed along to a state court. It was thus error to allow Nasuti's motion to remand, and we vacate that ruling.

## VII. DISTRICT COURT'S POWER TO RESOLVE SCOPE ISSUE

■ There remains the question whether, given Congress's direction as to the conclusive character of the Attorney General's scope certification for removal purposes, the district court itself has the power and duty in circumstances such as these to resolve the scope of employment dispute. If not, our sole direction to the district court, relying on the scope certification, must be to dismiss Nasuti's assault and battery claim, since if Scannell acted within the scope of his employment as certified to by the Attorney General, he cannot be individually sued. See note 13, supra.

Yet, while section 2679(d)(2) provides that the Attorney General's certification "shall conclusively establish scope of office or employment *for purposes of removal,*" we do not read this language as manifesting Congressional intent that certification place the scope question permanently beyond judicial reach (emphasis supplied). The government, although somewhat unclear on this issue, seems to agree with us that a judicial scope determination is not foreclosed.

■ The Sixth Circuit has recently reached a very similar conclusion, based on the legislative history of the Westfall Act. *Arbour v. Jenkins,* 903 F.2d 416 (6th Cir. 1990). Even without that history, it is hard to imagine Congress empowering an executive officer, the Attorney General of the United States, to displace the federal court as the final determiner of the scope of employment question, thus forcing a federal court to forego determination of its own jurisdiction, and preventing the plaintiff, by executive fiat, from pursuing a possibly legitimate claim in state court. Especially is this unlikely given the Attorney General's interested relationship to the case. It is his responsibility to represent and protect the interests of the United States and of the defendant employee, see 28 U.S.C. § 2679(c). There is no suggestion that the Attorney General is to conduct a neutral proceeding, open to all parties, before taking a final position on the scope question—the least one might have expected had Congress intended the Attorney General to substitute for the federal courts as the final arbiter of a controversy affecting

The Fifth Circuit has recently ruled that questions similar to those here should be reviewed on appeal rather than by mandamus. It held that by resubstituting the federal employee—thus denying him immunity and burdening him with defending in the state court—the district court created a reviewable issue as to immunity. *Mitchell v. Carlson,* 896 F.2d 128 (1990). In rejecting our present mandamus analysis, the Fifth Circuit took the view that the Westfall Act's provision for scope certification, and its deletion of express remand authority, still left the court free to remand for reasons unrelated to the scope certification. Responding to these two matters, we think (1) there well could be merit in the Fifth Circuit's view of the appealability of the immunity issue, although we do not decide the question. We disagree (2) with its reasoning as to mandamus. At least where, as here, remand was on grounds inextricably mixed with the scope of employment issue, and was plainly barred by the scope certification, we believe mandamus is appropriate under *Thermtron Products,* for reasons stated.

both the parties' rights and liabilities and the court's jurisdiction. In FTCA cases, scope of employment disputes are regularly resolved by the district courts, it being a condition to federal liability and the court's subject-matter jurisdiction that the officer or employee who committed the tort was acting within the scope of his or her employment. *See, e.g., White v. Hardy,* 678 F.2d 485 (4th Cir.1982) (upholding finding by district court that off-duty seaman driving Navy vehicle had not been in course of his employment when accident occurred). Here while FTCA liability is not involved, scope of employment bears a similar, critical relationship to the question of defendant's federal immunity and the court's jurisdiction.

We see nothing inconsistent between judicial determination of a scope dispute and Congress's grant of conclusive weight to the Attorney General's scope certification. The granting of conclusive weight to the certification enables the Attorney General quickly to remove cases from state courts, and to maintain them in the federal courts where all questions affecting the rights and liabilities of federal employees while acting within the scope of employment will be resolved. Only in relatively rare circumstances such as the present, where the facts underlying the scope issue are disputed, need the matter be independently resolved by the court—and at all such times the government and the sued employee will have the benefit of a federal forum pursuant to the scope certification.

That Congress had no thought to oust the federal court from its normal adjudicative role is suggested by the Westfall Act's provision for federal judicial review of any *refusal* by the Attorney General to certify scope of office or employment. *See* 28 U.S.C. § 2679(d)(3). In a situation like the present, where a plaintiff seeks to have a defendant deprived of the immunity and protection of the Attorney General's scope certification, there is a parallel need for judicial recourse.[16] Otherwise, the plaintiff would lack any means for a fair and impartial resolution of the issue which now stands as an impenetrable barrier to the assertion of whatever state private action rights, if any, the plaintiff may legitimately possess. Indeed, there might be a separation of powers question if the statute were read to leave the Attorney General as the sole judge of an issue determinative of the jurisdiction of the federal court. There would also be an issue of fundamental fairness were the Attorney General allowed arbitrarily to bar, without affording due process, a claim such as Nasuti's. We think the statute is properly read to imply that—while deferring to the scope certification for removal purposes—the federal district court will continue to exercise its customary adjudicative jurisdiction over scope of employment disputes that, like the present, call into question its subject-matter jurisdiction and the parties' substantive rights.

Thus while the district court erred in remanding, Nasuti's remand motion sufficed to raise the scope of employment

**16.** We differ in this regard from the view seemingly taken by the Fifth and Tenth Circuits. *Mitchell v. Carlson,* 896 F.2d 128 (5th Cir.1990) and *Aviles v. Lutz,* 887 F.2d 1046 (10th Cir.1989). While we entirely concur in their view that scope certification must be given conclusive effect for purposes of removal, that conclusive effect lasts only until the court speaks on the specific scope issue. Congress cannot have meant to cut off judicial determination of a genuine controversy relative to the scope question which may, as here, be dispositive of the rights and liabilities of the parties. Where, as here, the Attorney General has certified that the government employee was acting within the scope of his employment, but the tort charged (assault and battery) is one of the § 2680(h)

exceptions which could not by definition be within the scope of employment, there is an obvious need for a disinterested forum to resolve the matter. Permitting an orderly judicial determination in, exclusively, a federal forum, assists—it does not weaken—the statutory purpose behind the Attorney General's certification. The Attorney General can see to it, by making the certification, that the federal defendant's scope status is resolved by a federal, not a state tribunal; employee immunity will thus be protected, in keeping with the Westfall Act's purpose, except where the plaintiff can convince a federal court that the government employee was acting outside the scope of his employment and, therefore, by definition, was not entitled to immunity from personal liability.

question for the court's immediate determination. It should have decided the scope question, thereby determining not only its own jurisdiction but the future course of Nasuti's claim.

## VIII. CONCLUSION

We accordingly direct the district court to vacate its remand order and to proceed to determine the merits of the scope of employment issue.

If the district court finds that Scannell was acting *outside* the scope of his employment, it shall remand the case back to the state superior court. If, however, Scannell was acting *within* the scope of his employment, the district court must dismiss Nasuti's assault and battery claim, since a claim against a federal employee acting within the scope of his employment is barred by 28 U.S.C. § 2679(b)(1).[17]

Accordingly, the district court shall vacate its order of remand to the state court and conduct further proceedings not inconsistent with this opinion.

As we are confident that the district court and the parties will comply with our orders in this regard, we see no need to issue an actual writ of mandamus at this time. The appeal in this case is dismissed as moot in light of our disposition of the petition for writ of mandamus.

*So ordered.*

---

**17.** We imply power to enter a remand order (should scope not be found) from the analogous authorization in section 2679(d)(3), and from the fact that a remand is both more logical and efficient than a dismissal of the federal action.