Amber Lee WARE, Plaintiff

v.

Woolson DOANE, Defendant

No. CIV. 02–CV–128–B–S.

United States District Court,
D. Maine.

Oct. 21, 2002.

Humphrey H.N. Johnson, Esq., Lowry & Associates Attorneys, Portland, ME, for Amber Lee Ware, plaintiff.

Frederick C. Moore, Robinson, Kriger, McCallum & Greene, P.A., Portland, ME, for Woolson Doane, defendant.

Evan Roth, Office of the U.S. Attorney, Portland, ME, for Movant.

### ORDER ACCEPTING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

SINGAL, District Judge.

No objections having been filed to the Magistrate Judge's Recommended Decision filed September 27, 2002 the Recommended Decision is accepted.

Accordingly, it is *ORDERED* that ruling on the United States' Motion for Substitution and Dismissal is *DEFERRED* and an evidentiary hearing concerning whether Dr. Doane was acting within his scope of employment at the time accident will be scheduled.

### RECOMMENDED DECISION ON THE UNITED STATES' MOTION FOR SUBSTITUTION AND DISMISSAL

KRAVCHUK, United States Magistrate Judge.

Sometime in the late morning of February 18, 1998, Plaintiff Amber Lee Ware and Defendant Dr. Woolson Doane were involved in a motor vehicle accident. Dr. Doane is the Chief of Medicine for the Togus Veterans' Administration Regional

Office and Medical Center in Augusta, Maine (Togus). As such, Doctor Doane is a federal employee. Ms. Ware filed suit against Dr. Doane in Kennebec County Superior Court on December 7, 2001, seeking to recover for personal injuries that she contends Dr. Doane caused through negligent operation of his motor vehicle.

On or about August 21, 2002, the United States removed the action from the Superior Court pursuant to 28 U.S.C. § 2679(d)(2) and also submitted the motion addressed herein, captioned as a "Motion for Substitution and Dismissal." With this motion the United States seeks to substitute itself as the proper party defendant in place of Dr. Doane, pursuant to the Westfall Act, 28 U.S.C. § 2679. In support of this motion, United States Attorney Paula Silsby has certified, in accordance with § 2679(d)(1) and 28 C.F.R. § 15.3 that Doctor Doane "was acting within the scope of his employment as an employee of the United States Department of Veterans' Affairs at the time of the alleged automobile accident."

In the event that the motion for substitution is granted, the United States moves for dismissal due to Ms. Ware's failure to administratively pursue her tort claim against the Veterans' Administration within two years of the accident, in accordance with the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2401(b).

I recommend that the Court **DEFER** ruling on the United States' Motion for Substitution and Dismissal and hold an evidentiary hearing concerning whether Dr. Doane was acting within the scope of his employment at the time of the accident. In the event that the Court finds as a fact that Dr. Doane was acting within the scope of his employment, I recommend that the Court **GRANT** the motion, substituting the United States as a defendant and dismissing the claim for failure to comply with the FTCA.

## "Scope Certification" and The Westfall Act, 28 U.S.C. § 2679

The Westfall Act [1] authorizes the Attorney General [2] to certify that a federal employee named as a defendant in a civil tort suit was "acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1) & (2). When a suit is pending against a federal employee in a state court, the Attorney General's certification requires that the suit "be removed without bond to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending." *Id.* § 2679(d)(2). In addition, upon certification "the employee is dismissed from the action and the United States is substituted as defendant." *de Martinez v. Lamagno,* 515 U.S. 417, 115 S.Ct. 2227, 2229, 132 L.Ed.2d 375 (1995).

The Attorney General's scope certification is subject to judicial review.

---

**1.** The Westfall Act amended key provisions of the Federal Torts Claims Act applicable to actions against federal employees. Properly known as the Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub.L. 100–694, 102 Stat. 4563, the statute was Congress's response to the Supreme Court's decision in *Westfall v. Erwin,* 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988). *Nasuti v. Scannell,* 906 F.2d 802, 803–804 (1st Cir.1990) (discussing *Westfall* and Congress's response thereto). *See also Bergeron v. Henderson,* 47 F.Supp.2d 61, 64 (D.Me. 1999) (same).

**2.** The Attorney General has delegated this authority by regulation to United States Attorneys, who make scope certification determinations in consultation with the Department of Justice. 28 C.F.R. § 15.3. The Attorney General's delegation authority is set forth in 28 U.S.C. § 510.

*Id.* at 2229. If the certification stands following judicial review, then the federal employee defendant is not only dismissed from the suit, but is granted immunity from any subsequent suit arising from the certified conduct, and the suit then proceeds against the United States under the FTCA. *Id.* at 2230; *Lyons v. Brown,* 158 F.3d 605, 606–607 (1st Cir.1998); *Bergeron v. Henderson,* 47 F.Supp.2d 61, 64 (D.Me. 1999); 28 U.S.C. § 2679(b)(1). Conversely, if the certification is overruled, then immunity for the federal employee will not arise, the United States will not be substituted as the party defendant, and, if the tort suit was removed from a state court, it is remanded. *Nasuti v. Scannell,* 906 F.2d 802, 803 (1st Cir.1990).[3]

> State law controls the determination of whether a federal employee was acting within the scope of employment. Maine courts apply section 228 of the Restatement (Second) of Agency on the issue of scope of employment. The principles set forth in the Restatement (Second) regarding the scope of employment are the following:
>
> (1) Conduct of a servant is within the scope of employment if, but only if:
> (a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

*Bergeron,* 47 F.Supp.2d at 65 (citing *McLain v. Training and Devel. Corp.,* 572 A.2d 494, 497 (Me.1990) and quoting Restatement (Second) of Agency § 228, at 504 (1958)).

 Although the Supreme Court held that scope certifications are subject to judicial review, it did not indicate in *de Martinez* how judicial review should proceed. Notably, a scope certification is a unilateral determination by an executive officer;[4] therefore, there is no preexisting administrative record for the court to review. Nevertheless, the scope certification is itself *prima facie* evidence that the defendant was acting within the scope of his or her employment. *Bergeron,* 47

---

3. In *de Martinez,* which was issued subsequent to *Nasuti,* Justice Ginsburg, author of the majority opinion, opined that a district court could retain jurisdiction in a non-diversity case lacking a federal question without running afoul of Article III, because review of a scope certification pursuant to the Westfall Act necessarily "arises under" federal law and, therefore, the tort action could be retained through an exercise of supplemental jurisdiction. 115 S.Ct. at 2236–37. However, a majority was not reached on this point. Furthermore, Justice Ginsburg's evaluation was dicta, because *de Martinez* was originally filed in federal court based on diversity of citizenship. Therefore, *Nasuti* still governs within this circuit.

4. As is customary, *see de Martinez,* 115 S.Ct. at 2230, United States Attorney Silsby's scope certification is to the point and devoid of factual development:

> I, Paula D. Silsby, United States Attorney for the District of Maine, United States Department of Justice, ... hereby certify that I have read the Complaint in this action and, on the basis of the information now available with respect to the allegations therein, I find that the individually named defendant Woolson Doane was acting within the scope of his employment as an employee of the United States Department of Veterans Affairs at the time of the alleged automobile accident on about February 18, 1998.

F.Supp.2d at 65 (citing *Brown v. Armstrong,* 949 F.2d 1007, 1012 (8th Cir.1991)). In *Day v. Mass. Air Nat'l Guard,* 167 F.3d 678 (1st Cir.1999), the First Circuit Court of Appeals held that a plaintiff who challenges a defendant's certification under the Westfall Act "bears the burden of proving the defendant acted outside the scope of his employment." *Id.* at 685. To do so, the plaintiff must make an evidentiary proffer capable of generating a genuine issue of material fact as to whether the defendant was acting outside the scope of his or her employment. Only if the plaintiff succeeds in this task will a hearing be afforded. *Id.* at 686 (holding that a court "is entitled to something more than conclusory abstractions" in a complaint and that plaintiff failed to "justify [a hearing] under ordinary summary judgment standards, which are a good analogy in this instance"); *Bergeron,* 47 F.Supp.2d at 68 ("[A] party challenging a Westfall certificate must justify the need for [a hearing] by presenting evidence of facts that create a genuine conflict in the immunity-related facts.").[5] Finally, in order to generate a genuine issue on whether the federal employee's conduct was performed within the scope of his or her employment, a plaintiff may rely on factual allegations set forth in a *verified* complaint and on supplemental submissions having evidentiary quality. *Day,* 167 F.3d at 686; *see also Bergeron,* 47 F.Supp.2d at 67–68 (discussing the alternative means that a reviewable record might be presented).

**5.** A plaintiff is entitled to one evidentiary indulgence. The "existence of a harm-causing incident ... must be assumed [though] not the plaintiff's characterization of events." *Day,* 167 F.3d at 686 (citing *Wood v. United States,* 995 F.2d 1122 (1st Cir.1993)).

**6.** In its reply brief, the United States refers to certain additional pages from Dr. Doane's deposition transcript. Reply Brief at 2, n. 2.

## Discussion

In the instant case, Ms. Ware's complaint is unverified and, in any event, it is also devoid of any factual allegations concerning the scope of Dr. Doane's employment. U.S. Attorney Silsby's certification of Dr. Doane's employment is, similarly, not supported by affidavit or any other evidence. Therefore, it is incumbent on Ms. Ware to produce evidence on the issue through supplemental filings appended to her filing in response to the Motion to Substitute. This she has done through numerous exhibits attached to her responsive filing. The United States has not supplemented the record created by Ms. Ware in connection with its reply brief.[6] I now turn to an evaluation of this record to determine whether there exists a genuine issue of fact that would warrant a hearing.

Ms. Ware's contention is that Dr. Doane was commuting home from work when the accident occurred, and thus was not engaged in conduct (1) of the kind he was employed to perform; (2) occurring within authorized space limits; or (3) actuated by a purpose to serve the Veterans' Administration. In part, Ms. Ware relies on inferences that might be drawn from Dr. Doane's statement. In this statement, Dr. Doane states that the accident occurred shortly after he left Togus en route to a work-related meeting at the headquarters of the Veterans' Integrated Service Network in Bedford, Massachusetts. Dr. Doane further states that he would normally use a government car for such a trip,

However, copies of these pages were not attached to the United States' brief. In any event, the information related on these pages, according to the United States, is simply cumulative of information related in Dr. Doane's statement. Furthermore, the United States' failure to supplement the record in no way jeopardizes its ability to succeed on its motion.

but that he used his own car on that occasion, although he cannot recall the reason why he did so. Dr. Doane further states that he left Togus "sometime between 10:00 and 11:00 a.m." for the meeting in Bedford, Massachusetts, which was scheduled to begin at 2:00 p.m. Plaintiff's Response, Exhibit 2.

Ms. Ware also relies on excerpts from Dr. Doane's deposition transcript, as well as data compilations compiled by the National Oceanic and Atmospheric Administration, which provide local climatological data for Portland, Maine in February 1998, including February 18, 1998. From these two submissions, the record would support the conclusion that there was substantial snowfall on the day in question and that Dr. Doane was driving in roughly two inches of snow when the accident occurred. *Id.,* Exhibit 4 at 38–39 & Exhibit 5. Furthermore, Dr. Doane states that the accident occurred shortly after 11:00 a.m. while he was still in the Augusta area. *Id.,* Exhibit 4 at 12. This statement significantly narrows the scope of the representation made in Dr. Doane's prior statement that he departed "sometime" between 10:00 and 11:00 a.m. Dr. Doane's deposition testimony also reflects that he went home following the accident, without attempting to get to the meeting in Bedford, even though his car was still capable of being driven after the accident. *Id.,* Exhibit 4 at 56.

■ Ms. Ware has also submitted an affidavit obtained from George Prescott, a field investigator in the employ of her counsel. *Id.,* Exhibit 3. In his affidavit, Mr. Prescott states that he spoke with "Trooper Leach," who investigated the accident, and that Trooper Leach told him that Dr. Doane told Trooper Leach that Dr. Doane was on his way home when the accident occurred. *Id.,* Exhibit 3, ¶ 7. The United States objects to this proffer on the ground that it is hearsay within hearsay. I note that Dr. Doane's own alleged statement to the trooper would constitute an admission, and therefore Trooper Leach would be capable of testifying to this fact. The question becomes whether there is a basis for excepting Mr. Prescott's own, second-hand statement from the hearsay rule. Mr. Prescott avers in his affidavit that he "recorded Trooper Leach's statement during the course of [his] conversation with Trooper Leach," *id.,* Exhibit 3, ¶ 8, but he nowhere avers that it is "the regular practice of his business activity" to make such a recording. Fed.R.Evid. 803(6). For this reason, I sustain the United States' objection to this proffer and I do not consider the alleged admission in evaluating the evidence, much as I would do when addressing a summary judgment motion. *Day,* 167 F.3d at 686 (stating that application of summary judgment standards is appropriate).

Ms. Ware also asks that the Court take judicial notice of the fact that the travel time from Augusta, Maine to Bedford, Massachusetts is approximately 2 hours and 52 minutes and that the distance is 164.2 miles. She supports this request with a copy of driving directions obtained through an online mapping service provided by Yahoo!. Plaintiff's Response, Exhibit 6. She wants the Court to draw an inference that it was unlikely that Dr. Doane would depart at around 11:00 a.m., as opposed to an earlier time, for a Bedford meeting scheduled for 2:00 p.m., particularly when a significant snow storm was occurring.

Finally, Ms. Ware offers the affidavit of Attorney Anthony Irace, which outlines the course of her counsel's investigation and representation. *Id.,* Exhibit 6. Attorney Irace relates, "It is our standard operating procedure in all tort claims handled by Lowry & Associates to investigate all

possible parties to the claim and to investigate if any parties are governmental agents or employees . . . ." *Id.*, Exhibit 6, ¶ 3. Attorney Irace's affidavit also describes an extended period of pre-suit correspondence with Dr. Doane's insurance carrier. Attorney Irace complains that, throughout this period of time, neither Dr. Doane nor his agents ever disclosed that Dr. Doane would be "claiming immunity based on any assertion that [he] was acting within the scope of any form of employment at the time of the incident." *Id.*, Exhibit 6, ¶ 25. I do not draw any negative inference against the United States or Dr. Doane for failing to volunteer such information. It was incumbent upon Ms. Ware's counsel to determine whether Dr. Doane may have been acting within the scope of his federal employment *before* the FTCA's two-year limitation period had expired. Dr. Doane had no duty to disclose this fact. I also note that nothing prevented Ms. Ware from investigating this issue and filing an FTCA notice of claim with the Veterans' Administration within the two-year period.

■ In summary, Ms. Ware has presented the fact that travel conditions were very poor on the day in question; that the timing of Dr. Doane's departure was not ideal for timely arrival in Bedford, Massachusetts; and that Dr. Doane made no attempt to attend the Bedford meeting despite being able to drive his car sometime shortly after the accident. She has also presented evidence that Dr. Doane was in his personal vehicle rather than a government car, which he most commonly would have taken to this sort of meeting. Although it is by no means the only inference that can be drawn, nor necessarily the most reasonable one, I consider it a fair and permissible inference that Dr. Doane was headed home for the day, due to the storm, rather than to a meeting in

Bedford, Massachusetts. Certainly this proffer amounts to more than "conclusory abstractions" and "quasi-legal generalities" and, thus, warrants an evidentiary determination. 47 F.Supp.2d at 68. For this reason, I would find that Ms. Wade has generated an issue of fact concerning whether Dr. Doane was acting within the scope of his employment at the time of the accident. If, in fact, Dr. Doane had left work for the day and was commuting home for personal reasons, then as a matter of law his conduct would not fall within the scope of his employment. *See Mosko v. Raytheon Co.*, 416 Mass. 395, 622 N.E.2d 1066, 1068 (1993) ("Travel to and from home to a place of employment generally is not considered within the scope of employment."); *see also cf. Trusiani v. Cumberland & York Distrib.*, 538 A.2d 258, 262–63 (Me.1988) (holding that an employer is not liable under the Workers' Compensation Act for injuries caused by an intoxicated employee driving home after a company party); *Westberry v. Town of Cape Elizabeth*, 492 A.2d 888, 890 (Me. 1985) (holding that a police officer was not injured "in the course of employment" for purposes of workers' compensation coverage when he was injured while driving home at the end of his "formal shift," even though he was on call at the time).

### Limitation on Tort Actions Against the United States, 28 U.S.C. § 2401(b)

Because my recommendation leaves unresolved the appropriateness of the U.S. Attorney's scope certification, it is unnecessary to address the United States' Motion to Dismiss. Nevertheless, in the event that the Court should disagree with my recommendation regarding the appropriateness of a hearing or should find after a hearing that Dr. Doane was, in fact, engaged in work-related conduct, dismissal of the suit should follow. Because Ms. Ware's tort claim was not administratively

pursued within two years of her injury, any claim against the United States is time barred.[7] 28 U.S.C. § 2401(b). Furthermore, there is no justification in this case for equitable tolling. *Gonzalez v. United States*, 284 F.3d 281, 291 (1st Cir.2002) ("Although the plaintiff did not know the federal status of the defendants at the time of her treatment, she and her attorneys had two years to ascertain the legal status of the doctors and could easily have learned it."). There is no suggestion that Dr. Doane's employment status could not have been discovered by Ms. Ware and her attorneys during the course of their investigation prior to bringing suit.

### Conclusion

For the foregoing reasons, it is my recommendation that the Court defer ruling on the pending motion and hold an evidentiary hearing addressed narrowly to the question of whether Dr. Doane was headed home for personal reasons or to Bedford, Massachusetts for work-related reasons at the time of the motor vehicle accident.[8]

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

September 27, 2002.

---

7. Compliance with § 2401 is a jurisdictional prerequisite and cannot be waived by the defendant. *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir.2002).

8. Ms. Ware has requested leave to conduct further discovery on this issue. Given her counsel's subpoena power and ability to examine Dr. Doane as a hostile witness, there would appear to be no need for further discovery on the matter.